WILBUR FIELDS *vs.* SIDNEY V. OSBORNE AND ANOTHER.

New Haven & Fairfield Cos., April T., 1891. ANDREWS, C. J., CARPEN-
TER, LOOMIS, SEYMOUR and TORRANCE, Js.

The act of 1889 concerning elections, (Session Laws of 1889, ch. 247,) pro-
vides in the first section that all ballots shall be printed and of uniform
size, color and quality, to be determined by the secretary of the state,
and "shall contain, in addition to the official endorsement, only the
names of the candidates, the office voted for, and the name of the politi-
cal party issuing the same;" the ninth section provides "that if any
envelope or ballot shall contain any mark or device so that the same
may be identified in such manner as to indicate who might have cast
the same, it shall not be counted;" and the eleventh that "all ballots
cast in violation of the foregoing provisions, or which do not conform
to the foregoing requirements, shall be void and not counted." Held—

1. That the word "For," prefixed to the names of the offices, did not
necessarily make the ballots void, though the word could be so used as
to become a distinguishing mark within the ninth section; and that it
did not render the ballots void in this case.

2. That ballots were void which described the office of town clerk in a
town election as follows:—"For town clerk and *ex officio* registrar of
births, marriages and deaths "— the town clerk being made by statute
the registrar of births, marriages and deaths, but there being no office
of that name and it being no part of the name given by statute to the
office of town clerk.

3. That the following words upon the ballots rendered them void—"For
Judge of Probate, Henry H. Stedman "—there being no election at
that time of judge of probate.

A caucus of the republican party was held, pursuant to notice, two days
before a town election, for the purpose of nominating candidates for
the town offices to be filled at the election. Immediately after it was
organized a plan for making up a citizens' ticket from candidates
of both political parties was advocated, and after discussion it was
voted that the republican caucus adjourn and that a citizens' caucus be
organized. Thereupon ten or fifteen members of the democratic party
who were present, but had not participated in the proceedings, came
forward and acted with the republicans who were present, about fifty
in number, in nominating a citizens' ticket, the candidates upon which
were taken from both parties. A collection was taken for the expense
of printing the tickets. No steps were taken to effect a permanent
organization of a citizens' party or to provide for its further existence.
The republican party issued no tickets and no ballots were used at the
election except those headed "Democratic Ticket" and " Citizens'
Ticket." Held that the ballots were issued by a political party within
the meaning of the statute.

[Argued April 21st,—decided June 1st, 1891.]

PETITION to *J. M. Hall, J.*, under Gen. Statutes, § 58, which authorizes a judge of the Superior Court, on petition, to hear and decide upon contested claims to city and town offices. Facts found and case reserved for advice. The case is fully stated in the opinion.

*L. Harrison* and *E. Zacher*, for the petitioner.

*W. L. Bennett*, for the defendants.

SEYMOUR, J. This petition was brought under section fifty-eight of the General Statutes. The petitioner alleges that he was a candidate for selectman at the annual meeting of the town of Branford held on the first Monday of October, 1890; that he verily believes he received a sufficient number of votes to elect him; that he was not declared elected, but; on the contrary, the respondents were declared elected selectmen for the then ensuing year.

The facts upon which his claim is based, so far as they are important to the decision of the case, are in the petition stated as follows:—That more than one hundred ballots were counted for the respondents which were illegal and void and ought not to have been counted, "because they had upon them other words, and contained other words, than the names of the candidates, the office voted for, the name of the party issuing the ballot, and the official endorsement; and such words were not alterations or changes of the ballot within the provisions of section 12, chapter 247, of the Public Acts of 1889. Said one hundred and more ballots were cast in violation of the provisions of said act and did not conform to its requirements, because they did not contain the word " Republican " or the words " Republican Party," but did contain, at the top of the ballots, the words " Citizens' Ticket." Said one hundred and more ballots also contained, at the bottom of said ballots, the following illegal words:—" For Judge of Probate, Henry H. Stedman." Thereupon the petitioner prays that he may be granted a

certificate entitling him to hold and exercise the duties and powers of a selectman in said town.

The case was heard and reserved for the advice of this court.

In respect to the first claim, the circumstances attending the origin and history of the citizens' ticket are detailed in the finding. We extract such as are to the purpose.

Pursuant to public notice a republican caucus was held on October 4th, 1890, for the purpose of nominating candidates for the town offices to be filled at the town meeting to be held on the sixth of October. Immediately after the caucus was organized a plan for making up a citizens' ticket from candidates of all political parties was advocated. After discussion it was voted that the republican caucus adjourn and that a citizens' caucus be organized. Thereupon some ten or fifteen democrats, who were present but had not participated in the proceedings, came forward and acted with the about fifty republicans who were present, in nominating the citizens' ticket. The candidates nominated were republicans, except those for town clerk, treasurer and one grandjuror, who were democrats. A general collection was taken to defray the expense of printing the ticket. No committees were appointed at the caucus to carry out its purposes nor were any steps taken to effect a permanent organization of a citizens' party or to provide for its further existence. The chairman of the republican town committee procured the printing of said citizens' tickets and caused them to be placed in the booths on election day. The republican party issued no tickets, and no ballots were used at the election except those headed " Democratic," and those headed " Citizens' Ticket."

Previous to the caucus in question there had been no call issued for a citizens' caucus nor any organized political party in the town of Branford known as the citizens' party, but there had been some talk among a few republicans and democrats about the possibility of having a citizens' caucus, and of turning the republican caucus, that had been called, into a citizens' caucus.

Occasionally, in previous years, town officers have been elected in the town on tickets denominated "citizens'" tickets.

We are abundantly satisfied from the facts stated in the finding that, for the time being, and for the purposes of the election under consideration and within the meaning of the law requiring the ballots to contain the name of the party issuing them, there was a citizens' party in Branford.

The element of time is not essential to the formation of a legal party; it may spring into existence from the exigencies of a particular election, and with no intention of continuing after the exigency has passed. To hold the contrary would be to strike a blow at that independence in political action upon which the good government of a locality may depend. Nor can the number of voters that must unite in order to form a legal party be prescribed by law without violating one of the fundamental theories of popular government.

If it is shown, as it is in this case, that an independent political party was formed, that it assumed a distinctive name, and that the ballots which it issued sought the suffrages of the people under no false title, but bore the name of the political party issuing them, it is enough, so far as the point now being considered is concerned. To hold otherwise would be to abridge rights which are not only generally held to be sacred, but which it is of the utmost importance to preserve.

The petitioner lays some stress upon the finding that the real object and intent of holding the citizens' caucus was to nominate a ticket to defeat a certain candidate for selectman who had already been nominated at the democratic caucus, by nominating another democrat who had been an unsuccessful candidate for the same office in such democratic caucus. That may or may not have been a laudable object. We have no data from which to judge. But no one will seriously contend that courts can inquire into the motives which underlie the formation of political parties. Nor is the further suggestion sound, that because the real object

of the caucus failed of accomplishment and the hoped-for candidate for selectman was not nominated, therefore no citizens' party was formed. Notwithstanding such failure a citizens' ticket was nominated and a citizens' ballot issued and voted.

The second reason stated in the petition for granting the certificate is, because " said one hundred and more (citizens') ballots also contained, at the bottom of said ballots, the following illegal words :—' For Judge of Probate, Henry H. Stedman.' "

It appears that the citizens' caucus, in addition to the town officers that could be voted for at the annual town meeting, also nominated Henry H. Stedman for the office of judge of probate, who, by statute, could only be voted for, for that office, at the election held for state officers, etc., on the Tuesday following the first Monday of November thereafter, and that each of the citizens' tickets had upon it the words " For Judge of Probate, Henry H. Stedman." It also appears that the democratic ballots issued and cast at said election contained, after the words " For town clerk," the words " and *ex officio* registrar of births, marriages and deaths."

The act concerning elections passed in 1889, for the purpose of securing uniformity in the ballots used at electors' meetings and at all regular town and city elections, made certain express provisions as to the contents, among other things, of such ballots. The first section requires that, " in addition to the official endorsement, the ballots shall contain only the names of the candidates, the office voted for, and the name of the political party issuing the same." The ninth section provides that if any ballot " shall contain any mark or device so that the same may be identified in such manner as to indicate who might have cast the same, it shall not be counted," etc. All ballots cast in violation of the provisions of the act, or which do not conform to the requirements thereof as contained in the sections preceding the twelfth, said section declares " shall be void and not counted," with a proviso which does not affect this case.

Now there can be no question but that the legislature in-
tended to say that a ballot which failed to accord with cer-
tain specifically enumerated requirements should be void,
irrespective of all considerations as to the intent or effect of
such failure.   It considered uniformity an important means
of preventing fraud, and there were certain matters in
which uniformity could be expressly provided for.   But
ballots which satisfied the expressed standard of uniformity
might yet be made to lack entire uniformity, and so be iden-
tified, by various devices which the legislature could neither
provide against nor foresee ; so section nine was added.   As
it stands, therefore, there are certain particulars so clearly
stated in the act that it can be seen at a glance whether a
given ballot conforms to them.   As to them there is no
room for construction.   It is not within the province of the
court to say what the consequence of the failure to conform
shall be ; the act itself fixes it.   Though, ordinarily, there
can be little difficulty in deciding whether a ballot conforms
to the requirements of the first section of the act, yet not
everything can be settled by mere inspection.   For instance,
it is a question of fact, to be proved, whether the party whose
name the ballot contains in fact issued it.   The meaning
and intent of the words "the office voted for," used in de-
scribing the contents of the ballot, may be open to construc-
tion, and the question whether that provision has been
violated may depend upon circumstances.   But whether the
ballots in question, which in fact contained the words "For
Judge of Probate, Henry H. Stedman," in addition to the
official endorsement, the names of the candidates who could
be legally voted for, the office voted for, and the name of
the political party issuing the same, complied with the re-
quirements of the law, admits of no discussion.   At the time
the ballots were issued and cast there was no election for
judge of probate.   That office could not be filled at a town
election.   The title of the office and the name of the candi-
date were foreign to the ballot and were inserted in viola-
tion of the express and unambiguous terms of the act.

So too in respect to the words " and *ex officio* registrar of

births, marriages and deaths," contained in the democratic
ballots, they were inserted in violation of the act.   There is
no such office as that named in the ballots.   Chapter 181 of
the Public Acts of 1889 gives the names of the town offices
to be filled at town elections.   Among them is the office of
"town clerk."   Section 98 of the General Statutes provides
that town clerks of the several towns shall be, *ex officio*, the
registrars of births, marriages and deaths in their respective
towns, except in towns where such registrars are elected
under special laws.   Nowhere in the statutes are town clerks
called anything but town clerks.   It needs no argument to
prove that the duties performed *ex officio* by the incumbent
of an office form no part of the legal title of the office, unless
it is so expressed.

It being clear that the words "For Judge of Probate,
Henry H. Stedman " on the citizens' ballots, and the words
"and *ex officio* registrar of births, marriages and deaths " on
the democratic ballots, both come within the express prohi-
bition of the law, what is our duty?   If it was doubtful
whether the act applied to them, if their legality depended
upon a construction of the meaning or the language of the
act, our duty might not be plain.   If they could be held to
fall within the prohibition of any mark or device, contained in
the ninth section, instead of within the express prohibitions
of the first section, then it would be our duty to inquire
whether they constituted a mark or device by which the
ballot might be identified in such manner as to indicate who
might have cast the same.   But no.   A plain provision of
the law is violated in a point concerning which the act does
not authorize us to inquire into the intent or the consequences
of the violation.

In short, the legislature has seen fit to say that, if a ballot
contains the addition to its specified contents which these
do, it shall be void.   Unless we are prepared to hold the act
unconstitutional we cannot disregard its requirements.   If
it is harsh and unreasonable, the remedy is with the legisla-
ture that enacted it, and not with the courts which are
bound to respect it.   In regard to provisions which are plain

on their face, which are not dependent upon the question of good faith or the actual or possible result of disregarding them, we can only say again, in the language of the majority opinion in *Talcott* v. *Philbrick*, 59 Conn., 478, " we are relieved of any obligation to inquire into the necessity or reason of such requirement; and we are not at liberty to dispense with anything that is required, whatever the reason for it may be, or even if without any apparent reason at all. The legislature has spoken, and obedience is our first and only duty. It is at liberty to throw around the ballot box such safeguards and regulations as it may deem proper, and it is the duty of the citizen to conform thereto. Some inconvenience is not too great a price to pay for an honest, pure ballot."

The conclusions to which we have thus come are themselves decisive of the case. In addition however to the claims already considered, the record shows that the defendants claimed that the democratic ballots are illegal because the word "for" is printed on each of them before the name of every office named therein. This presents a question of some difficulty, and because it does we are satisfied that we have come to a correct solution of it. If it was plain and clear that the act, in limiting the contents of the ballot to the official endorsement, the names of the candidates, the name of the political party issuing the same, and " the office voted for," prohibited the use of the word "for" before the title to the office, we should be bound, upon the principles which we have herein already recognized as sound, to declare the ballots void for that reason.

But that the statute so intended is not plain and clear. On the contrary the language is ambiguous. There is room for honest and intelligent men to differ as to its meaning. The record in this very case shows that the state secretary, in a notice concerning elections issued in August, 1889, immediately after the act went into force, and before any discussion had arisen upon the point in hand, enclosed a printed form for a town ballot. This was sent to every postmaster and town clerk, and to the respective chairmen of the dem-

ocratic and republican committees in every town in the state, and the form of ballot so sent contained the word " for " before the title to every office named therein.

It is a matter of public notoriety also that ballots prepared by different persons equally determined to observe the requirements of the law, have in some cases contained the word "for" in juxtaposition with the offices voted for, and sometimes omitted it. The republican ballots as well as the democratic ballots in the case before us contained the word.

We refer to these instances in confirmation of our position that the language under consideration is in fact ambiguous. If ambiguous it is the proper subject of construction. In discharging the duty of construing it so that the voter shall not be deprived of his vote except upon a plain and unambiguous provision of the law, we feel bound to hold that the act does not, in terms and expressly, nor by necessary construction, prohibit the use of the word " for " before the title to the office. It follows therefore that neither its use nor the failure to use it necessarily and of itself invalidates a ballot. The question of illegality is remitted to the provisions of the ninth section of the act. If the regular ballots issued by a political party contain the word " for " before the title of the offices therein named, then it cannot be held to be a " mark or device," so that the same may be identified, in such manner as to indicate who might have cast the same, and therefore is not obnoxious to that provision. If the regular ballots of a political party omit the word " for," in the connection stated, then the use of the word on some of the ballots cast, inasmuch as it would be a mark or device by which the same might be identified, would be illegal. Each case must be governed by its own circumstances and be decided as a question of fact under the principles herein stated.

Upon the facts in this case we hold that the ballots in question were not illegal and void because of the use of the word " for."

They were however illegal, as we have already stated, for another reason. Being illegal, there is no foundation for the petitioner's claim that he was elected selectman, and his

petition, which was based upon that claim, must be dismissed. We so advise.

In this opinion CARPENTER and LOOMIS, Js., concurred. ANDREWS, C. J., and TORRANCE, J., concurred in the judgment, and fully in so much of the opinion as discusses the " for " ballots; but in the other parts of the opinion they concurred because they felt bound by the case of *Talcott* v. *Philbrick*, and did not intend in so doing to change or modify what was said by them in their dissenting opinion in that case.