ROBERT H. McCARTER, ATTORNEY-GENERAL, v. CHARLES D. McKELVEY ET AL.

ROBERT H. McCARTER, ATTORNEY-GENERAL, v. WILLIAM A. HOPSON ET AL.

ROBERT H. McCARTER, ATTORNEY-GENERAL, v. WILLIAM BERDAN ET AL.

Argued June 2, 1908—Decided November 10, 1909.

1. Chapters 45, 46 and 62 of the laws of 1907 creating respectively a board of fire and police commissioners, a board of finance, and a board of public works in cities having a population of not less than one hundred thousand and not more than two hundred thousand inhabitants are, each of them, general, not special, laws.

2. A statute which prohibits the appointment to a municipal board of more than a certain proportion of members of the same political party does not prescribe political qualifications for the holding of public office.

On *quo warranto.* Demurrer to information.

Before GUMMERE, CHIEF JUSTICE, and Justices TRENCH-ARD and MINTURN.

For the informant, *Richard V. Lindabury.*

For the demurrants, *William B. Gourley* and *John W. Griggs.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. These suits were instituted by the attorney-general for the purpose of testing the right of the several defendants therein to exercise the liberties, privileges and franchises of members of the board of fire and police commissioners, the board of finance, and the board of public works of the city of Paterson, under appointment by the mayor of that city, made pursuant to the terms of three acts of the legislature of this state passed in the year 1907, and constituting chapters 45, 46 and 62 of the laws of that year. The informations assert that these several acts are unconstitutional and void, and that the offices held thereunder are unlawfully held; the demurrers challenge the soundness of this assertion.

The framework of each of these acts is the same; each is made applicable to cities having a population of not less than one hundred thousand nor more than two hundred thousand inhabitants; each act gives the mayor power to appoint boards consisting of four resident members, not more than two of whom shall be members of the same political party; under each of these acts the boards created thereby are substituted for and vested with the powers and duties previously exercised by any board, committee or governing body having

control or management of the matters treated of in the various acts. In each act there is a repealer of all inconsistent acts. Taken together they clothe these three boards which they create with all the important governmental powers, and impose upon them all the important governmental duties which, prior to their enactment, were exercised and performed by the boards of aldermen or common council in the cities affected by the legislation.

The first contention made on behalf of the attorney-general in support of the informations is that each of these statutes violates the provision of article 4, section 7, paragraph 11 of the constitution of our state which prohibits the legislature from passing any private, local or special law regulating the internal affairs of cities and counties, appointing local offices or commissions to regulate municipal affairs. It has been settled by a long line of decisions by our courts that this constitutional provision does not prohibit the legislature from classifying cities for the purpose of passing acts regulating their internal affairs. It has further been conclusively determined by our courts that the classification of cities upon the basis of population, for the purpose of legislation regulating their internal affairs, does not violate the constitutional provision referred to when population bears a reasonable relation to the subject-matter of the legislation. It is conceded on behalf of the attorney-general that the power of the legislature, to the extent indicated, cannot be successfully challenged. The ground upon which he attacks the statutes under review is that population does not bear any reasonable relation to the matters with which they deal; that cities having a population between one hundred thousand and two hundred thousand have no characteristics which so distinguish them from those having a larger or smaller population, as to render the statutory provisions which are under consideration fit and appropriate to them alone, and unfit and inappropriate to municipalities having a greater or less number of inhabitants; that, for this reason, the classification is illusive and unsubstantial, and, consequently, makes the law special, although it sounds in general terms.

This contention is identical with that raised in this court by counsel in the case of *Owens* v. *Fury,* 26 *Vroom* 1, in which the constitutionality of an act passed in 1892, creating a board of public works and other offices in cities having a population of not less than fifty thousand, nor more than one hundred thousand inhabitants, was under consideration. The scope of that act was practically the same as that of chapter 62 of the laws of 1907 (now under scrutiny), and it conferred largely the same powers upon the board which it created. The conclusion reached in that case was that the classification by population was substantial, not illusory, and that such legislation was general, not special. In the case of *Varney* v. *Kramer,* 33 *Id.* 483, the constitutionality of an act similar in its purport was attacked, because, by its terms, it was applicable only to cities having a population of not less than fifty-five thousand, nor more than one hundred thousand inhabitants, the contention there also being that the classification by population was illusory and unsubstantial. This court there considered the decision of Owens *v.* Fury as controlling, and affirmed the constitutionality of the statute on that decision. The same course should be pursued in the present case. The doctrine of Owens *v.* Fury has never been overruled by the Court of Errors and Appeals; on the contrary, it would seem to have been approved (*obiter*) in the case of *Wanser* v. *Hoos,* 31 *Id.* 482, 534. Until that decision is overruled by the court of last resort it should be accepted as settling the question that legislation of the character under review is general, not special.

The attorney-general further insists that the statutes under review are unconstitutional "in that they prescribe political qualification for the holding of public office." No specific provision in the constitution, which prohibits such prescription, is referred to by counsel, and none such can be found. His argument is apparently based upon the theory that the imposing of political qualifications upon the right to hold public office violates the *spirit* of the constitution. Assuming that this proposition is sound, are these statutes in conflict

with it? We think not. They do not require that any of the officers named therein shall have any political qualification whatever. In fact the matter of the political faith of the officers to be appointed under them is not referred to at all, except with relation to the appointment of members of the several boards created thereby. As to them the statutes declare that each of those boards shall be composed of four members, "not more than two of whom shall be members of the same political party." Instead of prescribing political qualifications as a requisite for membership in these boards, the statutes permit them to be filled by persons who belong to no political party, who have no political affiliations. Nor do they make membership of a political party a ground of disqualification. All that they do is to limit the representation in the board of any existing political party. These provisions differ entirely from that which appeared in the statute under consideration in the case of *Attorney-General* v. *Detroit*, 58 *Mich.* 213, the principal authority relied upon before us by counsel for the informant. In that case the legislature provided that the municipal board which it created should be composed of four members "two members thereof to be from each of the two leading political parties in the said city." This legislation rendered ineligible to membership in the board any person who belonged to a political party other than the two leading ones in the city, as well as all those citizens who had no political affiliations. So, too, the legislation before the court in the case of *City of Evansville* v. *State*, 118 *Ind.* 426, referred to by counsel for the informant, was of the same character as that declared unconstitutional in the Michigan case. The statutes now before us have no such effect as those under consideration in the cases cited. They render no citizen ineligible on account of political affiliations or lack of them. On the contrary, every citizen of a city affected by this legislation is as eligible to membership in these boards as he is to any other office in the city, or in the county in which it is located, or in the state.

The only other authority relied upon in behalf of the in-

formant as supporting his contention is. *Barker* v. *People,* 3
*Cow.* 686. The question in that case was whether a statute for
the suppression of duelling, which provided, as a punishment
for sending a challenge, that the person so sending should, on
conviction, be disqualified from holding public office, was con-
stitutional. In the discussion contained in the opinion de-
livered by Chancellor Sanford it is declared that eligibility to
office belongs equally to all persons whomsoever not excluded
by the constitution; that the legislature cannot establish
arbitrary exclusions from office, or any general regulation re-
quiring qualifications which the constitution has not required.
The explanation of this expression of view to be found in the
later case of *Rogers* v. *Buffalo,* 123 *N. Y.* 173, makes it plain
that it affords no support for the contention made by the
attorney-general. Rogers *v.* Buffalo involved the question of
the constitutionality of a statute very similar in its scope to
those now before us. The conclusion reached by the New
York Court of Appeals was that it was not unconstitutional
because it contained a provision similar to that which we are
now considering. Discussing the expression which has been
quoted from the case of Barker *v.* People, Mr. Justice Peck-
ham, who delivered the opinion, speaks as follows: "What the
Chancellor meant by such expressions is rendered clear by
the examples he gives. Legislation would be an infringement
upon the constitution, he thought, which should enact that
all physicians, or all persons of a particular religious sect
should be ineligible to hold office, or that all persons not pos-
sessing a certain amount of property should be excluded, or
that a member of assembly must be a freeholder, *or any such
regulation.* But, in our judgment, legislation which creates
a board of commissioners consisting of two or more persons,
and which provides that not more than a certain proportion
of the whole number of commissioners shall be taken from
one party, does not amount to an arbitrary exclusion from
office, nor a general regulation requiring qualifications not
mentioned in the constitution. The 'qualifications' which
were in the mind of the learned Chancellor were obviously

those which were, as he said, arbitrary, such as to exclude certain persons from eligibility under any circumstances. Thus a regulation excluding all physicians would be arbitrary. But would a regulation which created a board of health, and provided that not more than one physician from any particular school, or none but a physician, should be appointed thereon, be arbitrary or unconstitutional as an illegal exclusion from office? I think not. The purpose of the statute must be looked at and the practical results flowing from its enforcement. If it be obvious that its purpose is not to arbitrarily exclude any citizen of the state, but to provide that there shall be more than one party or interest represented, and if its provisions are apt for such purpose, it will be difficult to say what constitutional provision is violated, or wherein its spirit is set at naught."

We concur in the view expressed in Rogers *v.* Buffalo that a statute, the purpose of which is to secure the appointment of persons who are not all of the same political views, and thus provide for a representation in the body so appointed, of different and probably conflicting interests in the municipality, does not, because it carries such a purpose into execution, violate either the letter or the spirit of the constitution by reason of the fact that it prohibits the appointment to the board which it creates of more than a certain proportion of members of the same political party, and are entirely content to rest this conclusion upon the reasoning of Mr. Justice Peckham in the very elaborate and able opinion from which we have quoted.

The defendants are entitled to judgment upon their respective demurrers.