ATTORNEY GENERAL, *ex rel.* CONNOLLY, *v.* READING.

1. CONSTITUTIONAL LAW—ELECTION INSPECTORS—APPOINTMENT.
   Act No. 176, Pub. Acts 1933, amending the general election law so as to provide for appointment of not more than 50 per cent. of election inspectors from the same political party for State and national elections *held*, not violative of either letter or spirit of the Constitutions of Michigan or the United States (Mich. Const., art. 16, § 2, U. S. Const., am. 14, § 1).

2. STATUTES — CONSTRUCTION — ELECTION INSPECTORS — LEGISLATIVE INTENT.

Portion of statute reading ''The provisions of this act *requiring that members of the dominant minority political party be appointed as election inspectors* shall apply only to State and national elections'' construed as though meaningless italicized words were omitted, is in accord with common sense construction of act as a whole and, so construed, renders intent of the legislature clear (Act No. 176, § 19a, Pub. Acts 1933).

3. ELECTIONS—INSPECTORS—POLITICAL AFFILIATION.

Statute requiring that not more than 50 per cent. of election inspectors for State and national elections shall belong to same political party *held*, not to make membership in a political party a prerequisite or disqualification to appointment as election inspector nor an unconstitutional interference with local self-government (Act No. 176, Pub. Acts 1933).

4. CONSTITUTIONAL LAW—CONSTRUCTION OF STATUTES.

An act of the legislature must be plainly at variance with some provision of the Constitution before a court will so declare it, doubtful questions being resolved in favor of validity.

5. ELECTIONS—STATUTES—INSPECTORS.

Claim that statute requiring that not more than 50 per cent. of election inspectors for State and national elections shall belong to same political party is impossible of performance *held*, without merit (Act No. 176, Pub. Acts 1933).

6. STATUTES—EXPENSE OF OBEDIENCE.

Expense attendant upon obedience to a valid election law is not a sufficient reason for not obeying it, but matter of cost of performance should be addressed to the legislature (Act No. 176, Pub. Acts 1933).

Petition by Patrick H. O'Brien, Attorney General, on the relation of William F. Connolly, Andrew C. Baird and Ferris H. Fitch, for mandamus to compel Richard W. Reading, John W. Smith, and John A. Boyne, City Election Commissioners of the City of Detroit, to comply with Act No. 176, Pub. Acts 1933. Submitted July 27, 1934. (Calendar No. 37,987.) Writ granted August 24, 1934. Opinion filed September 18, 1934.

*Patrick H. O'Brien,* Attorney General, *William F. Dorn* and *Perry A. Maynard,* Assistants Attorney General, and *Thomas F. Chawke,* for plaintiff.

*James R. Walsh* and *John H. Witherspoon,* Assistants Corporation Counsel *(Raymond J. Kelly,* Corporation Counsel, and *Chester J. Morse,* of counsel), for defendants.

Bushnell, J. Petitioners, resident electors of the city of Detroit, seek by mandamus to require compliance by the city election commission of the city of Detroit with the provisions of Act No. 176, Pub. Acts 1933.

The act amends the general election law and provides that:

"In case four inspectors of election shall be appointed, not more than two of the four inspectors shall be of the same political party, and in case more than four such inspectors are appointed, not more than fifty per centum, as nearly as possible, of such inspectors shall be of the same political party."

Similar provisions are made where the boards consist of three inspectors, the act covering city, village and township boards, and is applicable only to State and national elections.

Defendants have refused to comply with the act, submitting the following reasons:

1. That it is repugnant to article 16, § 2 of the Constitution of the State of Michigan, and amendment 14, § 1 of the Constitution of the United States.

2. That it is invalid because of an interference with the constitutional and municipal right of local self-government.

3. That the act is invalid because of impossibility of performance and it fails to set up a standard whereby party affiliation may be determined.

4. That section 19 (a) of the act refers to other provisions of the general election laws which are non-existent, but being inseparably connected with the remainder of the act, the entire act is thereby invalidated.

The principal question is the constitutional one. Article 16, § 2, of the Constitution of this State reads as follows:

"Members of the legislature and all officers, executive and judicial except such officers as may by law be exempted, shall, before they enter on the duties of their respective offices, take and subscribe the following oath or affirmation: 'I do solemnly swear (or affirm) that I will support the Constitution of the United States and the Constitution of this State, and that I will faithfully discharge the duties of the office of .......... according to the best of my ability.' No other oath, declaration or test shall be required as a qualification for any office or public trust."

Defendants say the issue is controlled by *People, ex rel. Le Roy,* v. *Hurlbut,* 24 Mich. 44 (9 Am. Rep. 103), and *Attorney General* v. *Detroit Common Council,* 58 Mich. 213 (55 Am. Rep. 675). The first case declared an act unconstitutional as violating the test oath section which required the members of the board of public works to be selected in equal numbers from two political parties represented in the common council, and the second relying on the *Hurlbut* opinion reached the same result with respect to an act creating a board of commissioners of elections of four members, two members thereof to be from each of the two leading political parties in the city of Detroit.

20 C. J. p. 92, points out that:

"It is a usual provision that the election officers of each district shall consist of members of opposing political parties, and in a number of jurisdictions there are also provisions for the nomination or recommendation by certain committees or chairmen of committees of the leading political parties of names of persons for appointment as election officials. In one jurisdiction (citing *Attorney General* v. *Detroit Common Council, supra*) such provisions have been held unconstitutional as making political opinions a condition to holding public office, but in others where the question has been raised it has been held that such provisions do not establish such a political test of office as is repugnant to the Constitution but is rather a rule for the guidance of the appointing power."

While 9 R. C. L. p. 1014, says of the same authority:

"It has been held that the power of appointment cannot be redelegated and for this reason a statute providing for the appointment of election inspectors by a board to be appointed by the mayor and council of a city, to consist of two persons from each of the two leading political parties, is unconstitutional."

Defendants also cite *Dapper* v. *Smith,* 138 Mich. 104, *Attorney General, ex rel. Selby,* v. *McDonald,* 164 Mich. 590 (32 L. R. A. [N. S.] 835), and *Harrington* v. *Secretary of State,* 211 Mich. 395, in support of their constitutional arguments.

The language of the act in question is entirely different from that construed in the authorities cited. It is, however, identical with that contained in Act No. 118, Pub. Acts 1893, which created the board of control of the prison and house of correction, 3 Comp. Laws 1929, § 17545; the board of jury

commissioners act, 3 Comp. Laws 1929, § 13752; the liquor control commission, Act No. 8, Pub. Acts 1933 (Ex. Sess.), and section 2, chapter 2, title 4 of the charter of the city of Detroit, creating its civil service commission. It is also somewhat similar in its provisions to the Federal jury commission act, 28 USCA, § 412. See *United States* v. *Murphy,* 224 Fed. 554, and *United States* v. *Rondeau,* 4 Woods, 185 (16 Fed. 109, 111). The first-named act was attacked in *Attorney General, ex rel. Fuller,* v. *Parsell,* 99 Mich. 381. Mr. Justice LONG, speaking for the court, said:

"That section provides that the board shall consist of three members, to be appointed by the governor, and not more than two of such members so appointed shall be of the same political party. The governor, by the same section is made *ex officio* member of the board. This provision of the act, we think, was passed for a salutary purpose, and was within the province of the legislature. We know of no provision of the Constitution of the State which it violates."

Mr. Justice Peckham in *Rogers* v. *Common Council of Buffalo,* 123 N. Y. 173, 185 (25 N. E. 274, 9 L. R. A. 579), distinguished the case of *Attorney General* v. *Detroit Common Council, supra,* in upholding the validity of a statute creating the civil service commission for the State of New York containing the same language as the instant statute, the language of the New York Constitution, article 13, § 1, being identical with ours. The same distinction appears in *Attorney General* v. *McKelvey,* 78 N. J. Law, 3 (74 Atl. 316, 138 Am. St. Rep. 583).

Our opinion in the *Parsell Case* is controlling and the act does not violate the Constitution of this State nor the Constitution of the United States.

The argument that the act interferes with the right of local self-government is of no merit in that it is limited in its application to State and national elections by section 19 (a). That section is, however, properly subject to criticism in its use of the words

"The provisions of this act requiring that members of the dominant minority political party be appointed as election inspectors shall apply only to State and national elections."

The words "requiring that members of the dominant minority political party be appointed as election inspectors" are meaningless as there is nothing in the act to which this language is applicable. We do not rewrite statutes, but it is elementary that the rules of common sense shall apply to the construction of statutes. Eliminating the meaningless words does no violence whatever to a common sense reading of the act. The intent of the legislature is clear and the section if read: "The provisions of this act shall apply only to State and national elections" clearly conforms to the remainder of the act without destroying its purpose and completeness and we shall so construe it. *People* v. *McMurchy,* 249 Mich. 147, 156.

No standard of party affiliation is set up in the act and none is necessary.

"Instead of prescribing political qualifications as a requisite for membership in these boards, the statutes permit them to be filled by persons who belong to no political party, who have no political affiliations. Nor do they make membership of a political party a ground of disqualification. All that they do is to limit the representation in the board of any existing political party." *Attorney General* v. *McKelvey, supra.*

Defendants argue that "the difficulty presented is the fundamental one of imposing a declaration of party affiliation as a condition of the right to hold public office." This argument entirely overlooks the fact that practically every judicial and administrative office in the State and nation has either been appointed or nominated and elected as a member of a political party and that the claimed sacrosanct non-partisan system is the exception rather than the rule. We can see no difference between this statute and any other which requires that candidates for election to any certain public office shall be limited to a certain number from each political party.

We adopt the language of Mr. Justice Peckham in *Rogers* v. *Common Council of Buffalo, supra:*

"If the legislative acts under consideration violate in any particular the Constitution of our State, it is the duty of this court to so decide without regard to consequences. In determining that question, however, we must be guided in the discussion by the rules of construction which are so well known and which should control all courts. The act of the legislature must be plainly at variance with some provision of the Constitution before a court will so declare it. Doubtful questions will be resolved in favor of the validity of the legislative act."

And we concur in the view he there expressed, as stated in *Attorney General* v. *McKelvey, supra,* that "a statute, the purpose of which is to secure the appointment of persons who are not all of the same political views, and thus provide for a representation in the body so appointed, of different and probably conflicting interests in the municipality, does not, because it carries such a purpose into execution, violate either the letter or the spirit of the Constitu-

tion by reason of the fact that it prohibits the appointment to the board which it creates of more than a certain proportion of members of the same political party and are entirely content to rest this conclusion upon the reasoning of Mr. Justice Peckham in the very elaborate and able opinion from which we have quoted."

We might add that every elector must declare his political affiliation if he desires to cast his ballot at a primary election, 1 Comp. Laws 1929, § 2903, and in order to sign a nominating petition, 1 Comp. Laws 1929, § 2871.

Defendants say the act is impossible of performance and imposes an unjust financial burden upon the people of the city of Detroit. We find no merit whatever in the claim of impossibility of performance and any appeal with respect to the cost of performance should be addressed to the legislature and not to this court.

"The expense attendant upon obedience to a valid law cannot be alleged as a sufficient reason for not obeying it." *Attorney General, ex rel. Conely,* v. *Common Council, City of Detroit* (syllabus), 78 Mich. 545 (7 L. R. A. 99, 18 Am. St. Rep. 458).

The writ of mandamus will issue as prayed for, but without costs, this being a public matter.

Nelson Sharpe, C. J., and Potter, North, Fead, Wiest, Butzel, and Edward M. Sharpe, JJ., concurred.