JOHN A. MILLS *v.* AMBROSE M. GAYNOR ET AL.

BROWN, JENNINGS, BALDWIN, INGLIS AND O'SULLIVAN, JS.

Argued February 10—decided May 16, 1950.

*Sidney Vogel,* with whom were *Richard S. Weinstein* and, on the brief, *Margaret Sigsway,* for the plaintiff.

*Robert B. Devine,* for the defendant Hansen.

*Donald H. McGannon,* for the defendant Gaynor.

BALDWIN, J.  This case comes before the court on an agreed statement of facts.  The charter of the city of Norwalk contains the following provisions concerning the selection of the registrars of voters: "Section 1.  On the first Monday of October, 1937, and biennially thereafter, there shall be elected at the general election for the choice of town and city officers, two registrars of voters, one from each of the two major political parties who polled, respectively, the largest and next to the largest number of votes at the previous city election of the city and town of Norwalk, who shall serve full time and be designated as a board of registrars of voters of said city.  Sec. 2.  Each of said registrars shall take office on the first Wednesday following his election and shall hold office for the term of two years from the Wednesday following his election and until his successor shall be elected and shall have qualified, unless sooner removed for cause as provided by statute in the case of elective officers of said city.  Sec. 3.  Said registrars shall be electors of said city and their duties shall be such as are required by statute in respect to election laws, including the preparation of

caucus and voting lists and the enrolment of all persons subject to the old age assistance tax." 22 Spec. Laws 655; 25 Spec. Laws 299.

The charter further provides that biennially there shall be a general election for the choice of town and city officers at which there shall be chosen, by a plurality of ballots, a mayor, councilmen, a treasurer, a city sheriff and "town officers; three selectmen, seven constables, two registrars, and a town clerk. . . . All of said officers shall be voted for on one ticket and shall hold office for the term of two years from the Wednesday following their election and until their successors are elected and have qualified. . . ." 16 Spec. Laws 1053, § 48; 18 Spec. Laws 909, § 1; 25 Spec. Laws 300, § 1.

The master sheet of the chief moderator discloses that at the election in 1945 the Democratic and Republican parties, each of which placed a full ticket in nomination, received the highest average and next to the highest average number of votes cast, respectively, and that the Socialist party nominated no candidate for the office of registrar. In 1947, the candidates for the Socialist party received the highest number of votes and the Republicans next. For this election the Socialist party nominated no candidate for the office of registrar, and the Republican and Democratic candidates for that office, nominated by virtue of the standing of their respective parties in the 1945 election, received the highest and second highest number of votes cast and were declared elected. Prior to the election held in November, 1949, the plaintiff, Mills, was nominated by the Republicans, the defendant Hansen by the Socialists, and the defendant Gaynor by the Democrats. The placing of the defendant Gaynor's name on the voting machines was questioned by the town clerk, and the corporation counsel ruled that the name should not

go before the voters. A rule to show cause why Gaynor's name should not be printed was issued from the Superior Court on his behalf, and at a hearing in court, Gaynor, by counsel, and the corporation counsel agreed that the name of Gaynor should appear on the ballot, without waiver, admission or prejudice, with all parties reserving their right to bring the matter into court for final determination after the election. The Republican, Democratic and Socialist parties have been nominating slates of candidates in the city elections for more that fifteen years, the Democrats and Republicans nominating full slates and the Socialists, until 1949, making nominations for many but not all offices. The Republican party caucus list for 1945 contained 6313 enrolled Republicans; for 1947, 6448; and for 1949, 7032. The Democratic party caucus list for 1945 disclosed 9999 enrolled Democrats; for 1947, 9938; and for 1949, 10,040. The Socialist party caucus list for 1945 disclosed 27 Socialists; for 1947, 41 Socialists; and for 1949, 76 Socialists.

At the election on November 8, 1949, the Socialist ticket as a whole received the largest number of votes, Hansen having received 7487. The Democratic candidates received the next highest number, Gaynor having received 6976. The Republicans were third, Mills having received 5322. The chief moderator certified that Hansen and Gaynor had been elected to the office of registrar and that Mills had not been elected. All three candidates took the oath of office. Mills thereupon brought a petition to Hon. James E. Murphy, a judge of the Superior Court, pursuant to § 527 of the General Statutes, praying for a certificate entitling the petitioner to hold and exercise the duties and powers of the office of registrar. The defendants Gaynor and Hansen appeared, filed answers and cross petitions, and, upon agreement of counsel, the case was reserved

for the advice of this court upon the following questions: "1. Is Section 1 of an act concerning Registrar of Voters for the Town and City of Norwalk (22 Special Acts 1937 Part 2, 655 as amended by 25 Special Acts 1947 Part 1, 299) constitutional? 2. Who were the two Registrars of Voters duly elected and entitled to hold office at the Town and City election held in Norwalk November 8, 1949?"

Had the charter provisions been accepted as constitutional and valid and had they been accorded the same interpretation as in previous years, the defendant Gaynor would not have been eligible for election as registrar in 1949 because he was not of either of the political parties that had received the largest and next to the largest votes in 1947. The defendant Gaynor contends that the charter provisions pertaining to the nomination and election of registrars of voters in the city of Norwalk are unconstitutional as violative of the constitution of Connecticut, article sixth, §§ 2, 4 and 6, as amended by the eighth, eleventh, thirteenth and twenty-ninth amendments. These constitutional provisions set forth the qualifications of electors and provide that every elector shall be eligible to any office in this state and that laws shall be made to support the privilege of free suffrage and prescribe the manner of regulating and conducting meetings of electors. Our whole elective system is the creature solely of constitutional and statutory provisions. *Taylor* v. *Beckham*, 178 U. S. 548, 577, 20 S. Ct. 890, 1009, 44 L. Ed. 1187. The exercise of the suffrage is not a natural but a political right, and the legislatures of the states acting within the powers conferred by their constitutions may prescribe the manner in which elections shall be conducted and the right of suffrage exercised. *Talcott* v. *Philbrick*, 59 Conn. 472, 478, 20 A. 436; *Meigs* v. *Theis*, 102 Conn. 579, 594, 129 A. 551; *Parvin* v. *Wimberg*,

130 Ind. 561, 566, 30 N. E. 790; *Common Council* v. *Rush,* 82 Mich. 532, 537, 46 N. W. 951. It is our duty to make every presumption and intendment in favor of the constitutionality of an act of the legislature and to sustain it unless its invalidity is beyond reasonable doubt. *Beach* v. *Bradstreet,* 85 Conn. 344, 349, 82 A. 1030; *Windsor* v. *Whitney,* 95 Conn. 357, 364, 111 A. 354; *Lyman* v. *Adorno,* 133 Conn. 511, 514, 52 A. 2d 702.

The defendant Gaynor specifically claims that the charter provisions under discussion are unconstitutional because, in effect, since the selection of the two political parties each of which is entitled to nominate a candidate for the office of registrar is made two years before the election at which the offices are to be filled, these candidates are selected at an election by voters who have had no opportunity to take any part in their nomination and are nominated by voters who might not be eligible to vote in the specific election at which the candidates are presented by name for election; that the charter provisions prevent a voter from putting forth his own name as a candidate for registrar of an independent or reform party; that they deny the privilege of writing in the name of an elector who has not been nominated at all; and that they deny the right possessed by every elector to be eligible to any office in the state.

For many years the statutes of our state have provided for the selection of two registrars for each town or, if the town is divided into districts, for each district, and that no person shall vote for more than one registrar. General Statutes § 509. Throughout our history there have been two major political parties, not only in the state but in the nation at large. From time to time other political parties have arisen and have succeeded for a time in electing their respective candidates

to public office. By far the greater number of voters, however, have been and are registered either as Democrats or Republicans. The legislature in its wisdom has deemed it sufficient to have two registrars in each city and town or in each voting district and has provided that they shall be selected from the parties casting the largest and the next to the largest number of votes. The only difference between the provisions of the General Statutes relating to the nomination and selection of registrars and the charter provisions here in question is that the charter limits the selection of the two registrars to candidates who are from the two political parties that polled the largest and next to the largest number of votes at the previous city election. We cannot say that this is an unreasonable provision. While it may deny for a period of two years any opportunity for a new or reform party to present its candidate for registrar, it does give to the two parties casting the highest and next to the highest number of votes representatives who compile the lists of those parties and of any other party under whose aegis any voter may desire to have his name registered. The registrars are not, strictly speaking, party officials. They are, as defined by law, city and town officials who have, in connection with preparing the primary, caucus and voting lists, broad powers and many duties which are of a public rather than a party nature. The legislature may well have believed that a multiplicity of such officials would tend toward confusion and inefficiency. *Miner* v. *Marsh*, 102 Conn. 600, 608, 129 A. 547.

The legislature has broad powers in prescribing how candidates shall be nominated and elected. In exercising those powers it must, of necessity, establish qualifications and classifications and place a limitation upon the number of candidates for political office and their manner of selection. The provisions may be such as

to include some persons and exclude others who failed to come within the qualifying provisions. See *State ex rel. Brush* v. *Sixth Taxing District,* 104 Conn. 192, 132 A. 561; *Francis* v. *Fitzpatrick,* 129 Conn. 619, 623, 30 A. 2d 552; *State ex rel. Buttz* v. *Marion Circuit Court,* 225 Ind. 7, 72 N. E. 2d 225; *Blue* v. *State ex rel. Brown,* 206 Ind. 98, 188 N. E. 583; note, 91 A. L. R. 349; *Attorney General ex rel. Connolly* v. *Reading,* 268 Mich. 224, 229, 256 N. W. 432; *State ex rel. Harvey* v. *Wright,* 251 Mo. 325, 334, 158 S. W. 823; *State ex rel. Jones* v. *Sargent,* 145 Iowa 298, 304, 124 N. W. 339. Section 513 of the General Statutes, like the charter provisions of Norwalk, describes registrars of voters as town officers. The provisions of the Connecticut constitution, article sixth, § 4, making every elector eligible to any office in the state do not apply to town officers. *Hackett* v. *New Haven,* 103 Conn. 157, 169, 130 A. 121. The charter provision is a constitutional exercise of the power of the legislature to establish the qualifications necessary to make a candidate eligible for the office of registrar.

The second question is, Who were the two registrars of voters duly elected and entitled to hold office at the election in 1949? It is urged that the Socialist party is not a "major political party" within the intention expressed in the charter, because the caucus lists of the three parties showed a marked preponderance in the number of registered voters on the Democratic and Republican lists as compared to the Socialist. The test of what constitutes a major political party is defined in the charter as the two parties that polled, respectively, "The largest and next to the largest number of votes at the previous city election." In 1947, the Socialist and Republican parties met this test and were, therefore, each entitled to nominate a candidate for the office of registrar of voters; the defendant Gaynor,

not being a member of either of those parties, was not eligible for the office. This interpretation gives flexibility to the operation of the charter provision and permits the two parties which receive the widest support by the electors to nominate for the office. The test of strength of a political party lies in the number of ballots cast in favor of its candidates at an election. The Socialist party demonstrated its qualification to be called a major political party under the terms of the charter when its candidates won the election in 1947. *Fields* v. *Osborne*, 60 Conn. 544, 547, 21 A. 1070; *Miner* v. *Marsh*, 102 Conn. 600, 608, 129 A. 547.

We answer question one, "Yes," and question two, "Christian Hansen and John A. Mills."

In this opinion BROWN, C. J., JENNINGS and INGLIS, Js., concurred.

O'SULLIVAN, J. (dissenting). I am in accord with the answer to the first question but disagree with that to the second. I interpret the charter section to mean that two registrars of voters shall be elected from the major political parties which at the previous election polled the highest and next to the highest vote for the office of registrar of voters. The result of this interpretation is that Mills and Gaynor are entitled to the offices in question.

The majority opinion leaves unanswered one vital question. How shall it be determined which of the major political parties polled the highest and second highest vote? For example, assume that an Independent party had elected in 1949 the only candidate it nominated, namely, John Smith for mayor. Is it entitled to a registrar of voters in 1951? Or assume that the party nominates a full slate and that Smith comes in a poor third, while his running mates for other city offices just nose out their Republican and Democratic

opponents. Which party polled the highest number of votes?

It has been suggested that the proper test is to average the votes. The following illustration will demonstrate the weakness of that method. Assume that the nominees of the Independent party for all the major offices are defeated by a slender margin in each instance, but that its nominees for the offices of constable swamp their opponents so badly that the average for all is thereby made greater than that of the other parties. Does this result permit the Independent party to claim the office of registrar of voters at the succeeding election? The legislature could not have so intended. The interpretation I place on the language of the charter is reasonable and will escape the difficulties which the majority opinion makes possible. And, in the instant case, it will avoid the anomalous result of denying a registrar of voters to the Democratic party, the caucus list of which shows that 10,400 persons are affiliated with it, as well as of denying two years hence a registrar of voters to the Republican party, with its 7032 members, while giving the office to the candidate for the Socialist party, on whose caucus list there are but 76 names.