STATE EX REL. ARBA I. COOLEY v.
CHARLES H. KEGLEY

BALDWIN, O'SULLIVAN, WYNNE, DALY and COMLEY, Js.

Argued June 14—decided July 27, 1956

*Stanley Yesukiewicz,* for the appellant (defendant).

*Phillip E. Tatoian,* for the appellee (plaintiff).

COMLEY, J. In this action of quo warranto, the trial court rendered judgment ousting the defendant from the office of selectman of the town of Enfield. The issues of law were presented upon a stipulation of facts which may be summarized as follows: On May 2, 1955, a regular town election was held in Enfield at which two Democrats and one Republican were elected to constitute the board of selectmen, their terms of office to commence on July 1, 1955, and to expire on June 30, 1957. On or about October 5, 1955, a vacancy was created by the resignation of the Republican member. Upon the application of twenty electors in accordance with § 646d of the 1955

Cumulative Supplement to the General Statutes (as amended, Nov. 1955 Sup., § N111), a special town election to fill this vacancy was held on December 6, 1955. At this election the plaintiff, who is a registered Republican, was the candidate of his party, and the defendant, a registered Democrat, was the candidate of his party. The defendant won the election and has assumed the office of selectman.

The judgment of the trial court that the defendant is not entitled to the office was based upon the portion of § 669d[1] of the 1955 Cumulative Supple-

---

[1] "Sec. 669d. SELECTMEN; MINORITY REPRESENTATION. Each town shall, at its town election, elect a first selectman, who shall be town agent unless otherwise provided by law, and two other selectmen or, in the case of any town having a population of ten thousand or more, not more than six other selectmen unless otherwise provided by law. When the number of selectmen to be elected by any town is even, no person shall vote for more than one-half the number, and when the number to be elected is odd, no person shall vote for more than a bare majority of the number. That number of persons sufficient to fill the offices to be elected who have the highest number of votes shall be elected. The selectmen so elected shall constitute the board of selectmen for such town. The votes cast for the unsuccessful candidate for first selectman shall be counted as votes for him as a member of such board, provided no elector may be a candidate for both the office of first selectman and that of selectman, and provided, if an elector receives write-in votes for both the office of first selectman and that of selectman, the moderator may count for purposes of this section either the votes which were written in for him for the office of first selectman or those which were written in for him for the office of selectman, whichever is more advantageous to such elector, but not both. No more than a bare majority of any such board shall be members of the same political party. If the electors fail to elect a first selectman at any election by reason of an equality of votes, such election for the office of first selectman and the election for selectmen shall stand adjourned for one week at the same hour at which the first election was held, and such adjourned election shall be held as provided in section 808d. The ballot labels used in such adjourned election shall contain only the names of the candidates for the offices of first selectman and selectman which appeared on the ballot label used in the election at which the tie vote resulted for the office of first selectman."

ment which provides that "[n]o more than a bare majority of [the board of selectmen] shall be members of the same political party." In his appeal to this court, the defendant raises but one question of law. He contends that the quoted portion of the statute applies only to boards of selectmen as elected at a regular town election and not to the filling of a vacancy at a special election.

This claim is without merit. The principle of minority political representation upon boards of selectmen and certain other municipal bodies became a part of our law with the enactment of chapter 81 of the Public Acts of 1877. This was accomplished by the application of the system of so-called restrictive voting whereby, if the number of candidates to be elected to a board was even, no person should vote for more than one-half of that number, and if the number was odd, no person should vote for more than a bare majority of that number. From 1877 to the present time, restrictive voting for the candidates for boards of selectmen has remained in force. Rev. 1888, § 46; Rev. 1902, § 1810; Rev. 1918, § 269; Rev. 1930, § 281; Rev. 1949, § 515; Cum. Sup. 1955, § 669d. In the practical operation of our political party system this method of voting has been effective to secure minority representation where the whole board is to be chosen at a regular town election. This would not be the result at a special election held to fill a vacancy. In fact, where only one office is to be filled, it would be mathematically impossible to follow the statutory system of restrictive voting.

The language now before us for construction had its origin in § 60h of the 1945 Supplement. By that statute, the position of first selectman was first set up as a separate elective office, and even though the principle of restrictive voting for boards of select-

men was retained in the preceding section (59h), there was added at the end of § 60h the sentence in question: "No more than a bare majority of [the board of selectmen] shall be members of the same political party."

It is difficult to observe any purpose in the addition of this sentence other than to ensure that at all times and however constituted, whether by regular or special election, a board of selectmen should have minority political representation upon it. For almost eighty years this wholesome principle, so advantageous to the public and to all political parties, has been recognized by the General Assembly through its retention of restrictive voting as applied to regular town elections. But for the addition of the language in question this desirable result could be defeated at a special election, for it is fair to assume that in most instances the party which elected a majority of the board at the regular election would prevail at a special election held a short time later to fill a vacancy occurring in the minority representation. This same assumption may be made if the vacancy is filled, as it may be in the absence of a call for a special election, by the remaining selectmen. Cum. Sup. 1955, § 699d.

Where, as in this case, the legislative intent is clear and the language used to express it is unambiguous, there is no room for statutory construction. *State ex rel. Rourke* v. *Barbieri,* 139 Conn. 203, 207, 91 A.2d 773; *Stamford* v. *Stamford,* 107 Conn. 596, 605, 141 A. 891. It would appear to have been the clearly expressed intent of the legislature that the principle of minority representation should control the results of special elections as well as those of regular elections.

The defendant objects to this conclusion on the

ground that at a special election held to fill a vacancy occurring in the minority representation on a board of selectmen, an elector belonging to the majority party is deprived of his right to vote for a candidate of that party. This is not a valid objection. It was pointed out in *Mills* v. *Gaynor,* 136 Conn. 632, 638, 73 A.2d 823: "The legislature has broad powers in prescribing how candidates shall be nominated and elected. In exercising those powers it must, of necessity, establish qualifications and classifications and place a limitation upon the number of candidates for political office and their manner of selection."

There is no error.

In this opinion the other judges concurred.