ABBEY HOMES OF MICHIGAN, INC v WILCOX

ABBEY HOMES OF MICHIGAN, INC v CASEY

Docket Nos. 78-2015, 78-2080. Submitted February 21, 1979, at Detroit.—Decided April 16, 1979. Leave to appeal applied for.

Plaintiff Abbey Homes of Michigan, Inc., and others, brought an application to alter the course of Old Orchard Trail, a public highway bordering on Orchard Lake in Orchard Lake Village in Oakland County. Despite some strong local opposition, the city counsel of Orchard Lake Village approved the proposal to move the intersection of Old Orchard Trail and Pontiac Trail some 410 feet. At the statutorily required hearing in circuit court, defendants Malcolm Wilcox and Everett Casey, and others, opposed the alteration of the course of Old Orchard Trail on the basis that the proposed route would eliminate a portion of Old Orchard Trail bordering on Orchard· Lake, such portion of the road having scenic value. Witnesses in favor of the alteration testified that the alteration would eliminate, at no cost to the taxpayers, certain safety hazards of the existing route and intersection, and that the altered route would provide a better view of the lake than the existing route. The Oakland Circuit Court, Alice L. Gilbert, J., upon determining that no reasonable objection existed as to the alteration of the course of Old Orchard Trail and that the alteration was in the best interest of the public, issued an order allowing the alteration. Defendants Wilcox and Casey appeal separately. The appeals were consolidated. *Held:*

1. Appellate review of an order altering the course of a public highway which borders a lake requires that the Court of Appeals determine whether the circuit court made any errors of law or whether the circuit court's findings of fact are clearly erroneous.

2. The hearing by the circuit court of an application to alter the course of a public highway which borders upon a lake is *de*

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error §§ 648 *et seq.* 702, 703, 839, 841.

39 Am Jur 2d, Highways, Streets, and Bridges §§ 131, 136.

[2, 3, 4] 39 Am Jur 2d, Highways, Streets, and Bridges §§ 131, 136.

*novo* in nature; however, the circuit court's belief that its role is one of reviewing the actions of local officials does not result in reversible error where the court made an independent determination in accordance with the statutory guidelines.

3. Evidence of the effect of an alteration of the course of a public highway upon portions of the highway lying beyond 5 rods from the lake shore is properly considered in determining whether to grant an application to alter the course of a public highway which borders a lake.

4. The term "reasonable objection", as used in the act governing the alteration of the course of a public highway which borders a lake, requires the circuit court to consider all the circumstances, including an evaluation of the best interest and welfare of the public, in its determination of whether the course of the highway should be altered.

Affirmed.

1. APPEAL AND ERROR — STANDARD OF REVIEW — PUBLIC HIGHWAY — STATUTES.

Appellate review of a circuit court's order altering the course of a public highway which borders a lake requires a determination of whether the circuit court made any errors of law or whether the circuit court's findings of fact are clearly erroneous (MCL 247.45; MSA 9.55).

2. HIGHWAYS — HIGHWAYS BORDERING LAKE — HEARING — STATUTES.

A hearing by a circuit court of an application to alter the course of a public highway which borders upon a lake is *de novo* in nature; however, a circuit court's belief that its role is one of reviewing the actions of local officials does not result in reversible error where the court makes an independent determination in accordance with the statutory guidelines (MCL 247.44; MSA 9.54).

3. HIGHWAYS — EVIDENCE — HIGHWAYS BORDERING LAKE — EFFECT OF ALTERATION OF COURSE.

Evidence of the effect of an alteration of the course of a public highway upon portions of the highway lying beyond 5 rods from a lake shore is properly considered in determining whether to grant an application to alter the course of a public highway which borders a lake.

4. HIGHWAYS — HIGHWAYS BORDERING LAKE — REASONABLE OBJECTION — SCOPE OF CONSIDERATIONS — STATUTES.

The term "reasonable objection", as used in the act governing the

alteration of the course of a public highway which borders a lake, requires that the circuit court consider all the circumstances, including an evaluation of the best interest and welfare of the public, in its determination of whether the course of the highway should be altered (MCL 247.44; MSA 9.54).

*Schmier, Fealk & Ellis* (by *Allen Zemmol*), for plaintiff.

*Everett R. Casey (pro se).*

*Kerr, Wattles & Russell* (by *Robert R. Nix, II*), for defendant Wilcox.

Before: ALLEN, P.J., and R. B. BURNS and N. J. KAUFMAN, JJ.

N. J. KAUFMAN, J. Defendants appeal from a March 28, 1978, order of the Oakland County Circuit Court which allowed alteration of Old Orchard Trail in Orchard Lake Village, Oakland County. Defendants claim that the circuit judge misconstrued and misapplied MCL 247.41 *et seq.;* MSA 9.51 *et seq.* We disagree and affirm.

According to its title, the act under consideration exists "to prevent the abandonment, discontinuance or alteration of the course of any public highway which borders upon, or is adjacent to any lake." It provides in relevant part as follows:

"No public highway which borders upon, or is adjacent to any lake, or the general course of any stream, or crosses any stream, nor any portion of such highway so bordering upon a lake or general course of any stream, shall be discontinued by the order or action of any official or officials of any township, city or incorporated village in this state, until an order authorizing the same shall have been made by the circuit court of

the county in which such highway is situated in the manner as hereinafter provided." MCL 247.41; MSA 9.51.

"Whenever the official or officials having jurisdiction over the highways of any township, village or city in this state shall desire to abandon, discontinue or alter the course of any public highway mentioned in the preceding section, before any action shall be taken by the said public authority or authorities of any township, village or city, an application signed by not less than 7 freeholders of the township, village or city in which such highway is situated, shall be made to the circuit court for the county in which such highway is located, setting forth the particular circumstances of the case, an accurate description of the highway proposed to be abandoned, discontinued or altered, together with the reasons therefor, which application shall be verified by 1 or more of the persons so signing." MCL 247.42; MSA 9.52.

"Upon the filing of such application it shall be the duty of the presiding circuit judge to make an order fixing a day of hearing thereon." MCL 247.43; MSA 9.53.

"Upon the day of hearing of such application or any adjournment thereof, testimony shall be taken on the part of the petitioner and any person or persons interested in such application, and if it shall satisfactorily appear to the court that there is no reasonable objection thereto, and that it is necessary for the best interest and welfare of the public that such highway be abandoned, discontinued or altered as to its course, as prayed for in such application, or if it shall appear to the court that such highway or any part thereof should remain as then established, an order shall be made and entered in the record of the court in accordance with such determination." MCL 247.44; MSA 9.54.

"The proceedings therein shall be subject to review by certiorari." MCL 247.45; MSA 9.55.

"The term 'adjacent' as used herein, shall be construed to include any highway, or portion thereof, lying within 5 rods of the shore of any lake or the general course of any stream." MCL 247.46; MSA 9.56.

This case began when Abbey Homes of Michigan, which wishes to subdivide some property along the south edge of Orchard Lake, and other petitioners proposed to move the intersection of Old Orchard Trail with Pontiac Trail 410 feet southwesterly away from the border of Orchard Lake. See diagram in appendix.

Despite some strong local opposition to the plan, the city council of Orchard Lake Village eventually approved the petitioners' proposal. Petitioners filed the statutorily required application in the circuit court on February 3, 1978. The court held hearings on March 6, 8, 10, 27, and 28, 1978, and stated:

"The Court finds as a matter of law and fact:

\* \* \*

"\* \* \* that the objections made to the altering of the highway relate to the loss of part of a historic route around Orchard Lake, and a loss of the public scenic view of the lake for six hundred sixty feet of highway adjacent to the lake.

"There is no question that any point where land meets a body of water is unique; and that the proposed alteration of Old Orchard Trail will eliminate the visual scenic beauty of the lake to the public.

"The issue presented to the Court is whether the proposed altered road is in the best interest and welfare of the public.

"The testimony indicates that the existing road is inadequate for the following reasons: Too narrow; inadequate shoulders; road design improper for current traffic patterns and vehicles; the radius of the curve of the road is less than the minimum road commission standards; there is a safety hazard in the reverse arcs of the curve; the banking of the curve fails to meet the road commission minimum standards; sight obstructions exist at the intersection of Pontiac Trail; and at the existing intersection the line sight is less than County road minimum standards; the trees partially

block the driver's view of the lake; and the home owners would have to cross the road to take advantage of their riparian rights.

"The testimony indicates that the proposed altered road would be an adequate and better road for the following reasons: Proper width and design for current and prospective traffic flow of vehicles; adequate shoulders; provides better radius and curve as required by the road commission standards; banking of the curve exceeds minimum standards; provides for scenic view of the lake with no obstructions while going north, directly to the lake; provides safer intersection with Pontiac Trail, with no sight obstructions, and better than minimum line sight; and pedestrian access to the lake requires no crossing of the road.

"The evidence further indicates that although the existing Old Orchard Trail could be improved, little can be done to improve the existing intersection with respect to the line sight requirements.

"Any improvements to the existing road would be at the City or public expense.

"The evidence further indicates that the proposed altered road requires no public expense, in that the new road would be constructed at builders' expense; and the land would be donated by the owner to provide for adequate shoulders.

"The proofs show only four hundred feet of the highway bordering on the lake would be altered, and that there would remain over thirteen thousand feet of highway adjacent to the lake for continued public use.

"The Court finds that the scenic beauty of the existing road would on balance be exchanged for the aesthetic beauty for the proposed altered road.

"Therefore, the objections to the proposed altered road, although real, are not reasonable when all the circumstances are taken into consideration.

"For all the foregoing reasons, the Court finds that the proposed altered highway is in the best interest and welfare of the public."

On May 3, 1978, the circuit court heard and denied numerous motions for a rehearing. Defen-

dants now appeal. We must determine if the circuit court made any errors of law or if the court's findings of fact are clearly erroneous.[1]

The parties raise numerous issues on appeal and we address their concerns in the following discussion of the act. Since each issue relates to the interpretation of a statute, we must remember "it is elementary that the rules of common sense apply to the construction of statutes." *Attorney General ex rel Connolly v Reading,* 268 Mich 224, 230; 256 NW 432 (1934).

Defendant Casey claims that the circuit court was unduly influenced by a mistaken belief that its role was to *review* the determination of local officials rather than to conduct a *de novo* hearing.

Defendant's interpretation of the statute is correct. The circuit court proceedings required by the act constitute an original action in that court. While the appropriate local officials must first desire to alter the course of a road protected by the act before the court petition and hearing procedures become necessary, see MCL 247.42; MSA 9.52, the court's role is to make an independent determination of the matter based on the guidelines of MCL 247.44; MSA 9.54. The court is not reviewing the actions of local officials.

In the instant case, over a month after her decision, the judge mistakenly referred to her role

---

[1] While the review provision of the act provides for review by certiorari, see MCL 247.45; MSA 9.55, the act was passed in 1927. Since then we have been given jurisdiction on appeals from all final judgments of the circuit courts, MCL 600.308(1); MSA 27A.308(1). The Michigan Supreme Court, through its rule making power, see Const 1963, art 6, § 10, MCL 600.223(2)(a); MSA 27A.223(2)(a), has replaced the writs of certiorari with limited complaints for superintending control, GCR 1963, 711, and has provided for civil appeals by right to this Court from all final judgments of the circuit courts, GCR 1963, 806.1. Since superintending control is not necessary in this case, and this appeal properly comes to us by right, see GCR 1963, 711.2 and 806.1, we apply the usual standards of review.

as one of reviewing the decision of the City of
Orchard Lake. However, since the judge strictly
adhered to the guidelines of the act and made an
independent determination of the issue, her error
does not require reversal. An improper label does
not alter the product.

Defendant Casey also argues that the judge
could not consider evidence regarding those por-
tions of Old Orchard Trail which lie farther than 5
rods from the lake in determining whether or not
to approve the alteration. Defendant is particu-
larly concerned with the court's interest in the
line sight deficiencies of the existing intersection
of Old Orchard Trail and Pontiac Trail, which
intersection is farther than 5 rods from the lake.

Circuit court approval is required before altera-
tions can be made in the course of any city, village
or township road which lies within 5 rods of a lake
shore. MCL 247.41; MSA 9.51 and MCL 247.46;
MSA 9.56. But in determining whether or not to
approve a proposed alteration governed by the act,
the court is nowhere limited by the act to consider-
ation of evidence regarding only that portion of
road within 5 rods of a lake. With apologies to
John Donne: No stretch of road is an island, entire
of itself.[2] Where the portion of road under consid-
eration draws its characteristics from the terrain,
the traffic and the rest of its length, a court would
be remiss in not considering those factors, regard-
less of their distance from the lake. Indeed, as a
general rule, a court should consider all relevant

---

[2] "* * * No man is an *Iland*, intire of it selfe; every man is a peece
of the *Continent*, a part of the *maine;* if a *Clod* bee washed away by
the *Sea, Europe* is the lesse, as well as if a *Promontorie* were, as well
as if a *Mannor* of thy *friends* or of *thine owne* were; any mans *death*
diminishes *me,* because I am involved in *Mankinde;* And therefore
never send to know for whom the *bell* tolls; It tolls for *thee."* John
Donne, Meditation XVII, in Devotions Upon Emergent Occasions
(1624).

evidence in making its decision. See generally MRE 401, 402 and 403.

In deciding to approve the alteration of Old Orchard Trail, the circuit judge considered evidence regarding the road and terrain within the immediate area of the proposed alteration, but farther than 5 rods from the lake. However, since this evidence relates directly to the advisability of the alteration, the judge did not err in receiving and considering it.

Both defendants contend the circuit court erred in its interpretation of MCL 247.44; MSA 9.54 by focusing on the best interest and welfare of the public and comparing the existing road with the proposed road to decide that there was no reasonable objection to the alteration. Defendants claim the language of the statute, which prevents circuit court approval of a proposed alteration unless "it shall satisfactorily appear to the court that there is no reasonable objection thereto, and that it is necessary for the best interest and welfare of the public", required the court to determine first that there was no single, isolated nonfrivolous objection to the alteration before considering the best interest and welfare of the public and before comparing the relative benefits and detriments of the proposed alteration. Defendants further argue that since the alteration would eliminate the scenic beauty of the existing route, there was the requisite reasonable objection to the alteration and the circuit court should have denied approval to the alteration.

On its face, defendants' argument has the appeal of simplicity. But taken to its logical conclusion, the argument reduces the statute to a useless enactment. Presumably, every road within 5 rods of a lake has some scenic, historic or public access

value. If an isolated objection based on one of these grounds is a reasonable objection under the act, as defendants suggest, it would be virtually impossible to alter any road near a lake, even though the alteration might be in the best interest and welfare of the public. We do not believe the Legislature intended this result, and we do not require circuit court judges to wear evidentiary blinders in determining whether or not the statutory "reasonable objection" exists.

The term "reasonable objection", as used in the act, is a term of art. It requires circuit judges to consider all the circumstances of the case to determine if there is a reasonable objection. The phrase "all the circumstances of the case" includes, but is not limited to, a comparison of the scenic, historic and public access values of the existing road and the proposed alternative; consideration of the safety features of the existing road and the proposed alternative; recognition of any relevant cost factors; and an evaluation of the best interest and welfare of the public.

If there are no reasonable objections, a circuit court must still determine that the alteration is necessary for the best interest and welfare of the public before approving the change. Where the petitioners do not show that the alteration is necessary for the best interest and welfare of the public, it is entirely possible that a court could deny an alteration, even though there are no reasonable objections to the alteration.

On the other hand, if there are reasonable objections to the alteration, we find it difficult to imagine a situation in which the proposed alternative still would be necessary for the best interest and welfare of the public.

In the present case, the circuit judge determined

there were no reasonable objections after considering all the circumstances of the case. Thereafter, the judge concluded that the proposed alteration was in the best interest and welfare of the public. The judge's approach was proper.[3]

Finally, defendants claim that the circuit court's conclusions that there were no reasonable objections to the alteration and that the alteration was necessary for the best interest and welfare of the public were not supported by the evidence. Defendants' major objection to the alteration was the loss of a scenic drive along the shore of the lake. Defendants also claimed that the safety hazards of the existing route were overstated and could be corrected.

As previously indicated, we must determine if the circuit judge's findings were clearly erroneous. GCR 1963, 517.1. A finding is clearly erroneous when, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Tuttle v Dept of State Highways,* 397 Mich 44, 46; 243 NW2d 244 (1976).

The circuit judge patiently heard a great deal of testimony from 17 witnesses. On March 6, 1978, five witnesses testified in favor of the alteration. An Abbey Homes realtor, the city attorney and

---

[3] We are not unmindful of the oft-amended and now repealed plat acts and their use of language similar in some respects to that in MCL 247.44; MSA 9.54. See 1915 CL 3355, and MCL 560.62; MSA 26.492. Nor have we ignored *Story & Clark Piano Co v Ottawa Circuit Judge,* 212 Mich 1; 179 NW 254 (1920), *In re Spears,* 227 Mich 525; 198 NW 952 (1924); or *Yonker v Oceana Cty Road Comm,* 17 Mich App 436; 169 NW2d 669 (1969), which interpreted the plat acts. But we have specifically avoided drawing an analogy between MCL 247.44; MSA 9.54 and the relevant plat act statutes because the language of the provisions and the stated purposes of the acts are significantly different. Additionally, we have not relied on the above-mentioned cases because, in each instance, public officials objected to the plat change. Here, public officials support the alteration.

the city chief of police all discussed the dangerous nature of the existing route and recommended the change. However, the chief of police admitted that the safety hazards of the existing route were minor compared to other city traffic problems. The realtor also stated that the proposed route offered a better view of the lake and its island than the present route, which is bordered by thick foliage.

Thereafter, six witnesses testified against the alteration. Four witnesses, including Messrs. Wilcox and Casey, stated that the safety factor was being exaggerated. But Mr. Wilcox did say the existing road should be improved. Additionally, four witnesses, including Messrs. Wilcox and Casey, testified to the scenic value of the existing road and their desire to retain the present route.

On May 24, 1978, six more witnesses presented statements in favor of the proposed alteration. All six stated that the change was necessary to make Old Orchard Trail a safer road. One witness testified that the view from the proposed route would be no less beautiful than that from the present route. Three witnesses, including two civil engineers, claimed that the proposed route would enhance the public's view of the lake.

After hearing and evaluating this testimony, as well as photographs and drawings of the area, the judge approved the alteration. Our careful review of the record does not leave us with a definite and firm conviction that a mistake was committed.

It is apparent that the witnesses who testified against the alteration had genuine and legitimate concerns regarding the loss of a scenic drive. But, under all the circumstances of the case, their scenic loss objection was not a reasonable objection as that term is used in the act and applied by the trial judge in her findings of fact. The evidence

preponderates in favor of the conclusion that the scenic view on Old Orchard Trail will be enhanced by the change. Additionally, the recommended alteration will improve the overall safety of the Old Orchard Trail-Pontiac Trail area. Therefore, the judge's determinations that there were no reasonable objections to the alteration and that the change was necessary for the best interest and welfare of the public were not clearly erroneous.

Affirmed. No costs, the interpretation of a statute being involved.

## APPENDIX

Orchard Lake

Present Location
of Old Orchard
Trail (20' wide)

Proposed Location
of Old Orchard
Trail (38' wide)

Approximately 410'

Center Line of Pontiac Trail