*In re* ACQUISITION OF LANDS

DETROIT EDISON COMPANY v ARMADA TOWNSHIP

Docket No. 76315. Submitted June 19, 1984, at Detroit.—Decided September 5, 1984. Leave to appeal applied for.

Detroit Edison Company brought an action in Macomb Circuit Court seeking to acquire property pursuant to the provisions of the Uniform Condemnation Procedures Act (UCPA) for the purpose of running a high voltage electric transmission line across certain lands located in Armada Township. Named as defendants were Armada Township, owner of one of the parcels sought to be acquired, and the individual owners of six other parcels located in Armada Township. At the time the action was commenced, the Armada Township zoning ordinance required that, prior to the erection of electric power transmission lines, the utlity must submit a plan indicating compliance with the provisions of the ordinance and the fact that there would be no adverse effects to the owners or users of adjoining property and that the township board must approve those plans. Armada Township and the individual defendants filed a motion for accelerated judgment on the ground that the condemnation action was premature because Detroit Edison had failed to secure a determination of necessity from the township. During the pendency of that motion, the township amended the zoning ordinance to require, as a condition of the construction and operation of an electric power transmission line in the township, a showing of a clear and apparent public need for the power transmission line. The trial court, Goerge R. Deneweth, J., granted the motion for accelerated judgment, finding that an action for the acquisition of land under the UCPA may not be brought by a utility until it has secured a certificate of public necessity where the utility is required by law to secure such

REFERENCES FOR POINTS IN HEADNOTES

[1] 73 Am Jur 2d, Statutes §§ 145, 146.

[2] 73 Am Jur 2d, Statutes § 223.

[3] 27 Am Jur 2d, Eminent Domain §§ 375, 386.
    64 Am Jur 2d, Public Utilities § 264.

[4, 5] 82 Am Jur 2d, Zoning and Planning § 153.

[5] 82 Am Jur 2d, Zoning and Planning § 103.

certificate from the public service commission or other public agency, that the Armada Township zoning ordinance required such a certification of need, that the township was "a public agency" within the meaning of the UCPA provision requiring certification, and that, therefore, the condemnation action was not properly brought by Detroit Edison since it had not yet secured the necessary certification of necessity. Detroit Edison appealed. The appeal was consolidated with an appeal by Richmond Township of Judge Deneweth's order denying it the right to intervene in this action as a party defendant. Following oral argument, the consolidation was set aside. *Held:*

1. While a township is a public agency within the meaning of UCPA, it is clear that the Legislature intended a more restrictive meaning of the phrase "other public agency" as used in the certificate of necessity provision of UCPA. As used in that section, "other public agency" was clearly intended to refer to some state agency other than the public service commission. Accordingly, a utility company need not secure a certificate of necessity from a township before it may proceed with acquiring property pursuant to the provisions of UCPA.

2. While there is no question that through the proper exercise of its zoning power a township may place restrictions on the use of land by utility companies, it is equally clear that the restrictions in the Armada Township zoning ordinance are directed toward construction and use of the land. Since condemnation of land is not in itself construction or use of land, the Armada Township zoning ordinance is not a bar to Detroit Edison's proceeding with acquiring lands pursuant to the provisions of UCPA.

3. On remand the trial court shall hold a hearing on the issue of the necessity of Detroit Edison to acquire the land within 30 days of any renewed motion for review of the issue of necessity and shall render a decision within 60 days after the date on which the hearing is first scheduled.

Reversed and remanded.

1. STATUTES — JUDICIAL CONSTRUCTION.

The primary object of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature; the language of the statute is the best source for ascertaining the intent of the Legislature.

2. STATUTES — JUDICIAL CONSTRUCTION — DICTIONARY DEFINITIONS.

Statutory language should be construed according to the common

and approved usage of the language and resort to dictionary definitions is an appropriate method of achieving this result.

3. EMINENT DOMAIN — CONDEMNATION — CERTIFICATE OF PUBLIC NECESSITY — PUBLIC UTILITIES — TOWNSHIPS — UNIFORM CONDEMNATION PROCEDURES ACT.

There is no clear expression that the Legislature intended that a public utility, before it can institute proceedings to condemn land pursuant to the Uniform Condemnation Procedures Act for the purpose of erecting a high voltage electric transmission line, must first secure a certificate of public necessity from local units of government through which the transmission line will pass; while a township is a public agency for some purposes of the Uniform Condemnation Procedures Act, the language of the act relative to securing a certificate of public necessity "from the public service commission or other public agency" was not intended to require that a private agency must first secure a certificate of public necessity from each township, the "other public agency" language in this context referring to another state agency (MCL 213.52[3], 213.56[3]; MSA 8.265[2][3], 8.265[6][3]).

4. ZONING — PUBLIC UTILITIES.

A municipal unit of government, through its power to zone, may regulate the activities of public utilities.

5. ZONING — PUBLIC UTILITIES — CONDEMNATION.

A township zoning ordinance which prohibits the construction and operation by a public utility company of a high voltage electric transmission line within the township unless certain conditions are met and approval is secured does not thereby prohibit the bringing of an action by the utility company for condemnation of land for such a transmission line, since condemnation of land, while it may lead to construction, is not itself construction.

*Thomas P. Beagen,* and *Honigman, Miller, Schwartz & Cohn* (by *William G. Christopher),* for plaintiff.

*Guastello & Dloski, P.C.* (by *Lawrence W. Dloski),* for Armada Township.

*H. C. Rosely,* for the individual defendants.

Amicus Curiae:

*Bauckham, Reed, Lang, Schaefer & Travis, P.C.* (by *Robert F. Travis),* for Michigan Townships Association.

Before: ALLEN, P.J., and WAHLS and M. WAR-SHAWSKY,* JJ.

ALLEN, P.J. In this appeal involving the acquisition of land for the purpose of constructing a 22-mile-long high energy transmission line, we are asked to decide a question of first impression: Does § 2 of the Uniform Condemnation Procedures Act (UCPA), MCL 213.52; MSA 8.265(2), require that a public utility, before acquiring property for a proposed transmission line, obtain a certificate of public necessity from each township or governmental unit through which the transmission line would run? On January 25, 1984, the trial court answered this question in the affirmative and issued an order of accelerated judgment in favor of defendants. Plaintiff appeals as of right. We reverse.

The facts are basically undisputed. In 1977, Edison developed a plan to build a 22-mile-long power transmission line (known as the "Saratoga-Jewell" line) from its Saratoga generating station in St. Clair County, through portions of Armada and Richmond Townships, to its Jewell station in Macomb County. Edison claims that this new line is necessitated by the impending completion of two new generating plants on Belle River which are expected to begin operation in 1984 or 1985. In late 1980, Edison filed a special land use application with Armada Township, which requested approval for construction of a 765 kilovolt power

---

* Circuit judge, sitting on the Court of Appeals by assignment.

line. On October 11, 1982, Edison filed a revised request for a 345 kilovolt line. At the time, Article X, § 1014 of the Armada Township zoning ordinance was in effect. Article X, § 1000 set forth general standards for "special approval land use requirements" to be submitted in plan form to the township planning commission. If the plans so submitted:

"meet the required standards of this Ordinance, Article, and applicable section and indicate no adverse effect, which in the opinion of the Township Board, would cause injury to the residents, users or adjoining property, or the Township as a whole, the Township Board shall approve the use. The Township Board after a recommendation from the Planning Commission shall have sole power to approve or disapprove all special approval uses".

Section 1014 of Article X, as then worded, provided in pertinent part as follows:

"Section 1014. PUBLIC UTILITIES, GAS AND OIL PIPELINES AND STORAGE FACILITIES

"Public utilities, electric and gas lines, gas storage fields, oil and gas pipe lines, transformer stations and other utility or services which transverse the Township of Armada. Such uses and site plans must meet the requirements of this ordinance and the following conditions:

"A. Utility lines and pipe lines shall follow section or quarter-section lines or mile roads wherever possible. Major overhead utility lines shall be permitted to parallel road rights-of-way only when there is no feasible alternate route or when such route would benefit the environment and/or the residents of the township or where there is no other reasonable route."

Pursuant to the ordinance, Edison's revised petition was referred to the township planning com-

mission. On June 13, 1983, while the application was still pending before the planning commission, Edison filed a condemnation action in circuit court under UCPA to "take" certain land in Armada Township for the construction of the Saratoga-Jewell transmission line. The township was the owner of parcel 10 of the land taken in the action and individual defendants were owners of parcels 9, 16, 18, 22, 23 and 24 therein. On July 6, 1983, the township filed a motion for accelerated judgment on grounds that the action was premature and should be dismissed because Edison filed its complaint for condemnation without showing necessity as required by § 1014 of the township zoning ordinance. The landowners of the various parcels listed above, as well as Richmond Township as amicus curiae, joined in Armada Township's motion.

While the motion was still pending before the circuit court, Armada Township adopted amendments to § 1014. As so amended September 21, 1983, the revised version required a public utility to prove a clear and apparent need for any proposed power transmission line.

"Section 1014. PUBLIC UTILITIES, GAS AND OIL PIPE-LINES AND STORAGE FACILITIES.

"Public utilities, electric and gas lines, gas storage fields, oil and gas pipelines, transformer stations and other utility or services which transverse the Township of Armada. Such uses and site plans must meet the requirements of this Ordinance and the following conditions:

"A. That a clear and apparent public need is proven for the proposed utility transmission line, including necessity based on future area consumer demands as predicted on documented projections."

On January 25, 1984, Judge Deneweth in a

written opinion granted the motion for accelerated judgment. In so doing, the court did not speak to the question of the subsequent rewording of § 1014. Instead, the court held that § 2 of UCPA, MCL 213.52; MSA 8.265(2), required a public utility to obtain a certificate of public necessity from the governmental unit through which the utility's power line would run as a condition precedent to condemnation.

"The Court holds Detroit Edison must obtain a certificate of public necessity pursuant to the Armada Township Ordinance as a condition precedent to bringing this action pursuant to MCL 213.52. That section makes it clear that the private agency shall not institute judicial proceedings to acquire property until it has secured the 'required certificate'. The required certificate is a 'Certificate of Public Necessity' from 'other public agency'. Armada Township is a 'public agency' within the definition contained in MCL 213.51(i). The intent of the Legislature in passing the Uniform Condemnation Procedures Act is to make uniform the procedures for the condemnation of property for public purposes in the State of Michigan. However, the Legislature did not wish to remove all requirements of prior approval by local government entities. As a result, the Legislature maintained the condition precedent language in MCL 213.52(3)."

Though the parties frame the issues differently,[1] both quantitatively and qualitatively, a fair synthesis thereof reveals three issues: (1) Does § 2(3) of UCPA require Edison to secure a certificate of public necessity from the township before commencing a condemnation action; (2) Does § 1014 of Armada's zoning ordinance require approval by

[1] Armada and the Michigan Township Association raise three issues. Edison's brief lists five issues, two of which relate only to expediting the appeal. One issue only is raised by the individual property owners.

the township before a private utility may acquire property; (3) Assuming the answer to question (2) is "yes", did the trial court err in applying Armada's newly enacted version of § 1014?

## I

*Does § 2(3) of UCPA require Edison to secure a certificate of public necessity from the township before commencing its condemnation action?*

This Court is again faced with the inherent conflict between the electrical power needs of an entire area versus the rights of individual townships to protect their residents' well-being. See *Detroit Edison Co v City of Wixom,* 382 Mich 673, 678; 172 NW2d 382 (1969). The lower court ruled that MCL 213.52(3) required Edison to secure a certificate of public necessity from Armada Township before instituting condemnation proceedings. MCL 213.52(3); MSA 8.265(2)(3) reads:

"If a private agency is required by law to secure a certificate of public necessity from the public service commission or other public agency before it may acquire property, the private agency shall not institute judicial proceedings to acquire the property until it has secured the required certificte."

Edison is a "private agency" empowered to condemn property under certain circumstances. MCL 486.252; MSA 22.1672, MCL 213.52(g); MSA 8.265(1)(g). The township rural zoning act, MCL 125.286(3); MSA 5.2963(16), gives a township the power to condemn property. Therefore, Armada Township falls within the definition of a "public agency". MCL 213.52(i); MSA 8.265(1)(i). To "acquire" property is to secure transfer of ownership of property to an agency by involuntary expropria-

tion. MCL 213.51(a); MSA 8.265(1)(a). However, "certificate of public necessity" is not defined by the UCPA and therein lies the ambiguity in the instant case.

Edison contends that "certificate of public necessity" refers to something issued by a state agency such as the Michigan Public Service Commission and that this interpretation is confirmed by language in § 6(3) of UCPA, MCL 213.56(3); MSA 8.265(6)(3), which states as follows:

> "With respect to an acquisition by a private agency, the court at the hearing shall determine the public necessity of the acquisition of the particular parcel. The granting of a permanent or temporary certificate by the public service commission shall constitute a prima facie case that the project, in furtherance of which the particular parcel would be acquired, is required by the public convenience and necessity."

Edison interprets the above section to provide that in situations where public necessity is not determined by the Michigan Public Service Commission or by some other state agency, then it is the circuit court which alone determines necessity. Since the Public Service Commission has consistently declined to pass upon the question of necessity for transmission lines, Edison argues, the question of necessity is for the circuit court.

In answer, Armada Township and the individual property owners contend that § 2(3) is plain and unambiguous and, further, that a comparison of the language in § 2(3) with § 3 of the 1947 statute (MCL 486.253; MSA 22.1673) discloses a deliberate intent to expand the requirement for a certificate of public necessity from a certificate of necessity issued by the Public Service Commission pursuant to two specific former statutes to any certificates of

necessity required by any public agency, including townships.[2]

The issue raised is of first impression in this state. The basic rules of statutory construction regarding the UCPA were summarized by this Court in *In re Condemnation of Lands,* 133 Mich App 207, 210-211; 349 NW2d 261 (1984), as follows:

"The primary object of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature. *Franks v White Pine Copper Division, Copper Range Co,* 122 Mich App 177, 183; 332 NW2d 447 (1982). The language of the statute is the best source for ascertaining this intent. *Espinoza v Bowerman-Halifax Funeral Home,* 121 Mich App 432, 436; 328 NW2d 657 (1982). Statutes must be construed according to the common and approved usage of the language. A resort to dictionary definitions is an appropriate method of achieving this result. *Fenton Area Public Schools v Sorensen-Gross Construction Co,* 124 Mich App 631, 639; 335 NW2d 221 (1983)."

For a general discussion relating to the newly enacted UCPA, see *Poletown Neighborhood Council v Detroit,* 410 Mich 616; 304 NW2d 455 (1981), which is the only case citing MCL 213.52. See also 59 Mich B J 337 (1980).

Though the issue is close, we believe the better reasoning lies with Edison. Sound reasons support our conclusion in this respect. First, if the Legislature had intended to make so major a change as to confer upon townships and other local units of government the power to issue "certificates of

[2] "The most major change in the language significantly expands the kinds of certificates of necessity whose lack forms a jurisdictional barricade. In the 1947 language the certificates of necessity involved only those required by two specific statutes. In the 1980 language, the threshold requirement is enlarged to include *any* certificate of public necessity required to be secured from *any* 'public agency'; and 'public agency' is defined in the statute in such a way to clearly include townships." Brief of amicus curiae, p 4.

public necessity" it is only reasonable to conclude that the Legislature would have done so in clear and unambiguous language. The term "certificate of public necessity" is a term of art which prior to the enactment of UCPA referred to the Michigan Public Service Commission or other state agency. Yet nowhere in the UCPA is there any statement or provision that henceforth a "certificate of public necessity" could be issued by local units of government.

Second, if, as claimed in the excellent brief of amicus curiae, those in charge of drafting the new statute had intended to expand the threshold requirement "to include *any* certificate of public necessity required to be secured from *any* public agency", such fact would have been conspicuously mentioned following passage of the legislation. Yet, in an article explaining the high points of the statute, Roche, *Uniform Eminent Domain Act,* 59 Mich B J 337 (1980), not a word is said that henceforth suits for condemnation could not be filed without first obtaining a certificate of public necessity from local units of government.

Third, a bill analysis of House Bill 4652, prepared by the House Legislative Analysis Section following the bill's enrollment,[3] makes no mention of a determination of necessity by a township. In fact, in explaining the intent of the statute, as it pertains to condemnations by a private agency as distinguished from a public agency, the analysis speaks of a determination by the court.

"Most *public agencies* now are required to make a finding of public necessity before commencing a condemnation proceeding. Some utilities must first secure a certificate of public necessity from the Public Service

[3] House Bill 4652 upon enrollment became 1980 PA 87, known and cited as "The Uniform Condemnation Procedures Act".

Commission (PSC) or some other public agency. Under the bill, these requirements would continue to apply.

\* \* \*

"Challenge of Public Necessity

"The owner of the property to be taken could move to challenge the necessity of the acquisition within the time prescribed in the complaint. A hearing would be held within 30 days of the filing of the motion and the court would render a decision within 60 days of the first scheduled hearing. A public agency's determination of public necessity could be overturned only if fraud, error of law, or abuse of discretion were shown. *The court would determine the necessity of an acquisition by a private agency* but the granting of a certificate by the PSC would constitute prima facie evidence of necessity. A determination of public necessity by the district court could be appealed to the court of appeals only by leave of the higher court." (Emphasis supplied.)

Fourth, one of the prime purposes for enactment of the uniform statute was to expedite condemnation. This purpose is obviously defeated if a public utility in seeking to acquire land for a long distance transmission line must first secure the approval of every township and local unit of government through whose boundaries the line must pass. The proposed transmission line in the instant case travels through five townships in two counties. If each township is required to pass on the question of necessity first, few projects would be completed, and those that were completed would be long delayed. Surely, this was not the intent of the Legislature. Rules of common sense apply to the construction of statutes, *Abbey Homes of Michigan, Inc v Wilcox,* 89 Mich App 574; 280 NW2d 868 (1979), and construction which leads to an unreasonable or absurd result should be avoided, *Automotive Service Councils of Michigan*

*v Secretary of State,* 82 Mich App 574; 267 NW2d 698 (1978).

Fifth, other jurisdictions ruling on the question have uniformly held that, in the absence of a statute which *expressly requires the approval and consent of a local unit of government* as a condition precedent to condemnation, such consent need not be obtained.

"*In the absence of a statute requiring the consent of a municipality* or other public board or officer as a condition precedent to the institution of condemnation proceedings, such consent need not be obtained. Even where such consent is statutorily required, it may not be the basis of an objection by the condemnee unless the obtaining of such *consent is expressly made a condition precedent.* There have been cases where statutes created such conditions precedent, *and in such instances compliance must be had with the terms of the statute prior to commencement of proceedings.*" 6 Nichols, Eminent Domain (3d ed 1965), § 24.63, pp 106-108 (emphasis supplied).

The above quoted section from Nichols is cited with approval in the brief of Armada Township. However, it should be noted that, in all the cases cited by Nichols requiring local approval, the applicable statute clearly and unambiguously so stated. In the instant case, the requirement for local approval is not clearly and unambiguously set forth. At best, it is only derived by construing the words "other public agency" to mean townships. A more logical explanation for the inclusion of that phrase in MCL 213.52(3); MSA 8.265(2)(3) is that the Legislature intended to extend the power to grant a certificate of necessity to successors of the Public Service Commission or some similar state agency.

For the foregoing reasons, we hold that § 2(3) of

UCPA does not require the approval of a local unit of government as a condition precedent to filing suit to acquire lands and the trial court erred in so ruling.

## II

*Does § 1014 of Armada's zoning ordinance require approval by the township before a public utility may acquire property by condemnation?*

It is appellees' claim that, even if § 2(3) of UCPA does not confer upon townships the power to require a certificate of public necessity, a township may, pursuant to the zoning powers conferred by 1943 PA 184, MCL 125.271 *et seq.;* MSA 5.2963(1) *et seq.,* regulate electric utilities. It is further claimed that Armada Township's zoning ordinance Article X, § 1014, if not as first enacted, at least as amended, requires township approval prior to Edison's filing an action to condemn lands. The authority of a municipal unit of government to regulate utilities under the power to zone was recognized in *Detroit Edison Co v City of Wixom,* 382 Mich 673; 172 NW2d 382 (1969).[4] Edison acknowledges the township's authority to reasonably regulate utilities under a township's zoning powers, but contends that § 1014, neither as first adopted nor as amended after Edison's suit was filed, required a utility to do anything *before it acquired property.* Edison admits that § 1014 regulates the use of land after it is acquired, and acknowledges that it must comply with all reasonable requirements imposed therein, but claims that those problems will be faced later after the property for the transmission line is acquired.[5]

---

[4] The city or village zoning enabling act referred to by the Court in *Wixom* is virtually identical to the township zoning enabling act.

[5] Edison also argues that "it is doubtful that Armada Township has

Edison's complaint was filed June 13, 1983, and Armada Township's motion for accelerated judgment was filed July 7, 1983. On those dates, § 1014 contained only four paragraphs, none of which even remotely mentioned acquisition of land or a certificate of public necessity. Further, Article X, under which § 1014 is subsequently found, refers to "land use requirements". Clearly, Armada Township's ordinance, as it stood at the time Edison filed suit, regulated the use of lands and not the acquisition thereof.

Two months after Armada Township had filed its motion for accelerated judgment, § 1014 was extensively amended by adding a new section A (quoted earlier) and new paragraphs D through S. The trial court's opinion dated July 25, 1984, was clearly based on the ordinance as amended. Although Armada Township denies amending the ordinance to advantage itself in the pending motion, it is evident that the amendments were the direct result of the litigation. For example, § 1014(R) contains lengthy requirements for lines carrying "345 KV or greater". Armada Township was well aware that Edison had withdrawn its initial request for 765 KV and had filed a revised land use application for a 345 KV transmission line. Also, § 1014(N) was added providing that any new power lines shall not interfere with radio or television transmissions. This was one of the concerns expressed by the individual property owners.

Nevertheless, despite the extensive amendments, Edison argues, and we agree, that the ordinance still falls short of an express condition precedent to the institution of a condemnation action. New

the power to regulate the acquisition of property through the vehicle of a zoning ordinance". However, for purposes of this our opinion herein, this claim need not be addressed.

§ 1014(A) clearly requires a showing of "clear and apparent public need *for the proposed utility transmission line*". That is far different than requiring a need for the acquisition of land or providing that Edison could not do anything "before it may acquire property". So too, subsections E through S all pertain to construction, location, and operation of the proposed transmission lines. Nothing per se appears in the ordinance concerning the right of the utility to acquire property. While condemnation may eventually lead to construction, condemnation is not itself construction, and in the absence of an ordinance specifically so stating, the township was without power to stop Edison from filing its action for condemnation.

Therefore, we conclude and so hold that § 1014 of Armada Township's zoning ordinance neither as first enacted or as subsequently amended requires township approval before a public utility may acquire property. Having so held, we must reverse the order of accelerated judgment and remand the case to the trial court for a hearing on the merits. Further, because our answer to issue (2) is "no", it is unnecessary to address issue (3). In this connection we note that the appeal by Richmond Township, Court of Appeals Docket No. 74487, involving the question of whether the trial court properly denied Richmond's motion to intervene in the instant case, and which was initially consolidated and heard on oral argument with the instant appeal, has been separated from the instant appeal.[6] A separate opinion will be issued in that matter.

Finally, it is appropriate that Edison's issue V be addressed. In issue V Edison asks that if this

[6] On July 12, 1984, this Court vacated the order of consolidation entered March 30, 1984. The two appeals continue as submitted on the case call June 19, 1984, however, separate opinions will issue.

Court reverses and remands to the circuit court, an early hearing and a prompt decision on the issue of necessity be ordered. Section 6 of UCPA, MCL 213.56; MSA 8.265(6), requires a prompt hearing and decision providing in pertinent part:

"(1) Within the time prescribed to responsively plead after service of a complaint, an owner of the property desiring to challenge the necessity of acquisition of all or part of the property for the purposes stated in the complaint may file a motion in the pending action asking that the necessity be reviewed. *The hearing shall be held within 30 days after the filing of the motion.*

* * *

"(4) *The court shall render a decision within 60 days after the date on which the hearing is first scheduled.*

"(5) The court's determination of a motion to review necessity shall be considered as a final judgment." (Emphasis supplied.)

In accordance with the above statutory provisions, we instruct the trial court to hear such renewed motion for a hearing on necessity as may be filed as nearly as can be within 30 days of the filing of said motion and to render a decision thereon within 60 days after the date on which the hearing is first scheduled.

Reversed and remanded in accordance with this opinion. No costs, a question of public importance being involved.