# STATE OF MICHIGAN

# COURT OF APPEALS

SIMS TOWNSHIP,

        Plaintiff-Counter Defendant-
        Appellee,

v

ARENAC COUNTY DRAIN COMMISSIONER,

        Defendant-Cross Defendant,

and

FRANCIS N. MORAN TRUST and JOHN F.
MORAN

        Defendants-Counter Plaintiffs-
        Cross Plaintiffs,

and

WALLACE & ORR BACKLOTTERS
ASSOCIATION,

        Defendant-Cross Plaintiff-
        Appellant,

and

ARENAC COUNTY ROAD COMMISSION,
WALLACE & ORR LAKEFRONT PROPERTY
OWNERS ASSN, DIRECTOR OF
TRANSPORTATION DEPARTMENT,
DIRECTOR OF NATURAL RESOURCES
DEPARTMENT, DIRECTOR OF LICENSING &
REGULATION DEPARTMENT, and STATE OF
MICHIGAN,

        Defendants-Appellees,

UNPUBLISHED
February 17, 2015

No. 318041
Arenac Circuit Court
LC No. 01-007657-CH

-1-

and

LAKEFRONT PROPERTY OWNERS ASSN,
CONSUMERS ENERGY, KAYE GREGORY, et
al,[1]

       Defendants.

_____

SIMS TOWNSHIP,

       Plaintiff-Counter Defendant-
       Appellee,

v

ARENAC COUNTY DRAIN COMMISSIONER,

       Defendant-Cross Defendant,

and

FRANCIS N. MORAN TRUST and JOHN F.
MORAN

       Defendants-Counter Plaintiffs-
       Cross Plaintiffs-Appellants,

and

WALLACE & ORR BACKLOTTERS
ASSOCIATION,

       Defendant-Cross Plaintiff-Appellee,

and

ARENAC COUNTY ROAD COMMISSION,

       Defendant-Appellee,

and

No.  318096
Arenac Circuit Court
LC No.  01-007657-CH

_____

[1] There are 655 parties, of whom the vast majority are not participating in the instant appeal.

WALLACE & ORR LAKEFRONT PROPERTY
OWNERS ASSN,

        Defendant,

and

DIRECTOR OF TRANSPORTATION
DEPARTMENT, DIRECTOR OF NATURAL
RESOURCES DEPARTMENT, DIRECTOR OF
LICENSING & REGULATION DEPARTMENT,
and STATE OF MICHIGAN,

        Defendants-Appellees,

and

LAKEFRONT PROPERTY OWNERS ASSN,

        Defendant,

and

CONSUMERS ENERGY,

        Defendant-Appellee,

and

KAYE GREGORY, et al,[2]

        Defendants.

---

Before:  SHAPIRO, P.J., and GLEICHER and RONAYNE KRAUSE, JJ.

PER CURIAM.

      This consolidated appeal concerns real property boundaries and riparian rights within a lakefront subdivision that was platted in 1904 and has, at least to some extent, been used in ways inconsistent with the plat.  This case commenced in 2001, when Sims Township named all of the

---

[2] There are 655 parties, of whom the vast majority are not participating in the instant appeal.

property owners within the subdivision as defendants, seeking to settle all of the various disputes between the owners. After many years and a lengthy trial, the trial court eventually held, relevant to the instant appeal, that all property owners in the subdivision had a right to use and enjoy the beach "for usual and ordinary beach activities," but the front lot owners adjacent to the beach had exclusive riparian rights; the trial court also held that certain platted roads had never been formally accepted and had been encroached upon in various ways by property owners, but that the platted roads should only be vacated to the extent of permanent structures thereon. The back lot owners appeal the first ruling, arguing that the beach should either be public or they should have coextensive riparian rights with the front lot owners. One of the property owners appeals the trial court's refusal to vacate certain of the platted roads in their entirety. The parties initially appealed certain postjudgment issues but averred at oral argument that those issues were resolved, so we do not address them. We affirm the trial court regarding the beach, reverse regarding one of the roads, and remand.

Factual findings made by a trial court are reviewed for clear error, reversible only if totally unsupported or if this Court is definitely and firmly convinced that they are mistaken, but with great deference given to the trial court's superior ability to evaluate the credibility of the witnesses and parties who appeared before it. *Augustine v Allstate Ins Co*, 292 Mich App 408, 424-425; 807 NW2d 77 (2011). Statutory interpretation and other questions of law are reviewed de novo. *2000 Baum Family Trust v Babel*, 488 Mich 136, 143; 793 NW2d 633 (2010).

Ordinarily, land cannot be riparian unless it actually touches the water. *Hilt v Weber*, 252 Mich 198, 218; 233 NW 159 (1930). Any land owned in fee between the property in question and the water will destroy whatever riparian rights that land might have in favor of the interposing fee owner. *2000 Baum Family Trust*, 488 Mich at 167. However, a common-law dedication of land to public use passes only an easement, not fee ownership. *Nash v Duncan Park Comm*, 304 Mich App 599, 628-630; 848 NW2d 435 (2014). A statutory dedication of land to public use passes an interest nominally described as being in fee, but it is "a fee *in name only*" and passes no more "rights in dedicated lands tha[n] the government had traditionally enjoyed at common law." *2000 Baum Family Trust*, 488 Mich at 164-166 (emphasis in original). Consequently, any kind of public dedication will not sever the front lotters' riparian rights, unless, critically, it is apparent that the plattor intended to pass fee ownership, perhaps as a private conveyance in fee to all subdivision owners. See *Thies v Howland*, 424 Mich 282, 293-294; 380 NW2d 463 (1985).

A statutory dedication requires two elements: "a recorded plat designating the areas for public use, evidencing a clear intent by the plat proprietor to dedicate those areas to public use" and "acceptance by the proper public authority." *2000 Baum Family Trust*, 488 Mich at 149 (quotations omitted). A valid common-law dedication of land for public use requires the property owner to have intended to offer the land for public use and use by the public generally. *Id*. at 147. Both the intent of the property owner and the use by the public are determined by considering all the relevant facts and circumstances. *Id*. at 148, see also *Conkling v Vill of Mackinaw City*, 120 Mich 67, 73-78; 79 NW 6 (1899). Parks, unlike roads, do not necessarily require overt maintenance or improvement, so public use thereof can be sufficient to effectuate acceptance of a park dedicated to the public. *Village of Lakewod Club v Rozek*, 51 Mich App 602, 604; 215 NW 780 (1974). Conversely, public use made of vacant private property that was never dedicated to the public in the first place will not, in the absence of some manner of

estoppel under extraordinary circumstances, convert such private property into a public park. *Baker v Johnston*, 21 Mich 319, 349 (1870); see also *Lee v Lake*, 14 Mich 12 (1865). Ultimately, the intent of the plattor is critical.

It is undisputed that the plat does not explicitly dedicate the beach to the use of the public, or in fact address the plattor's intent for the beach in any way at all. It simply shows that a beach exists and gives it the name "Promenade Beach." In contrast, the plat *does* explicitly specify "that the streets and alleys as shown on said plat are hereby dedicated to the use of the Public." The back lotters correctly state that the principle of *ejusdem generis* does not necessarily compel the conclusion that the beach was therefore not dedicated to the public merely because only the streets and alleys were explicitly mentioned. *Conkling*, 120 Mich at 69. However, the evidence must still show that the plattor had such an intention; e.g., in the form of an unambiguous attempted dedication that failed to comply with some legal requirements or an actual expression from the original property owner. *Id.* at 69-78. No such expressions of an intent to dedicate the beach to the public appear in the record here.

The back lotters contend that the "beach" on the plat should be construed as if the word was synonymous with a "park," on the theory that both labels demonstrate a clear intent by the plattor to convey the land for public use. A beach certainly *can* be treated as the equivalent of, or also being, a park. However, a "park" is explicitly defined as "a public area of land, usually in a natural state, having facilities for recreation," whereas a "beach" is defined as "an expanse of sand or pebbles along a shore." Random House Webster's College Dictionary (2001 ed); see also MCL 123.1133(h); MCL 141.321(a) (defining "parks"); *cf* MCL 333.12541(5)(a) (defining "bathing beach"). A "park" therefore by definition necessarily implies a public use, whereas a "beach" merely describes a geographic area. We decline to imply more than is stated. We also decline to imbue the name "Promenade Beach" with any particular significance.

We simply do not find any clear error in the trial court's finding that the beach was not a public park and conveyed no riparian rights away from the front lot owners. Because the front lot owners have not cross-appealed the trial court's finding that the beach is a private beach for use by all property owners in the subdivision, we do not disturb that finding; furthermore, we note that such a finding is a reasonable implication from the beach's inclusion in the plat as something seemingly distinct from either the streets or the lots. We note that the trial court explicitly held that nothing in its holding was intended to affect the public trust in the bottomlands. The trial court's holding that only the front lot owners have riparian rights is affirmed.

The back lotters also argue that the trial court should not have vacated portions of the beach landward of the seawalls erected thereon, arguing that as a consequence, they would be unable to enjoy the beach during times when the water is high. We disagree. The evidence showed that the front lot owners had constructed not only seawalls but also fences, some dating back more than half a century, and had used those areas exclusively. Objections to vacating land based on scenic beauty or lake access when principle routes of access would remain undisturbed are not reasonable. *Abbey Homes of Michigan, Inc v Wilcox*, 89 Mich App 574, 582-583; 280 NW2d 868 (1979). The trial court appears to have properly taken into account the entire situation as a whole. See *Westveer v Ainsworth*, 279 Mich 580, 584-85; 273 NW 275 (1937).

We find no clear error in the trial court's holding, which we deem to be a reasonable and balanced compromise between the competing interests.

Regarding the platted streets, we first address whether the individual front lot owner, the Morans, who chose to appeal the issue have standing to contest any roads *other than* the platted 19th and 20th streets. We find that the Morans do not. First, we must presume that the remaining backlotter parties who chose not to appeal are, for whatever reason, sufficiently satisfied with the result below. Appeal to this Court is by right for any aggrieved party, so the other backlotters' choice not to appeal may well mean they do not believe they are truly aggrieved. Indeed, the trial court effectuated a seemingly reasonable compromise by vacating the platted streets to the extent of permanent structures intruding thereon. That ruling has also not been cross-appealed, so all involved parties other than the Morans may have believed the result was good enough for their purposes. Second, we do not perceive how the Morans would benefit in any way from reversing the trial court's rulings regarding any streets that do not directly affect the Morans' own property. Only platted 19th and 20th streets do so. We therefore conclude that the Morans have standing on appeal only to challenge the trial court's holdings regarding platted 19th and 20th streets, so we address only those two streets.

We note first that the trial took place prior to our Supreme Court's decisions in *Tomecek v Bavas*, 482 Mich 484; 759 NW2d 178 (2008), and *Beach v Twp of Lima*, 489 Mich 99; 802 NW2d 1 (2011). In relevant part, those cases held that an action to vacate or revise a plat under the Land Division Act (LDA), MCL 560.101 *et seq*., cannot itself vindicate and substantive property rights, but rather can only effectuate a change to a plat to reflect a conflicting property right that has already been legally recognized. *Beach*, 489 Mich at 102. The parties, by agreement, tried the instant matter solely under the LDA, rather than, for example, explicitly trying a claim of adverse possession. *Beach* did not explicitly state whether it has retroactive effect on trials already conducted. However, we need not decide that question, because we agree with the Morans that they actually filed their action claiming adverse possession, and as a practical matter, adverse possession was effectively litigated.

Adverse possession requires the property claimant to prove clearly that they actually, visibly, openly, notoriously, exclusively, and continuously possessed the property for at least 15 years in a manner hostile to the true owner's title and either with the true owner's knowledge or so blatantly that the true owner must be considered on notice. *Burns v Foster*, 348 Mich 8, 14-15; 81 NW2d 386 (1957). Regarding platted 19th and 20th streets, the record unambiguously lacks any evidence that either was ever accepted by the public or improved as streets or pathways in any manner. There was evidence that *if* the platted streets were to be opened up as such, use *would* be made of them. However, the only evidence that any of the back lotters had *actually* used those platted streets was vague; we have not been cited any evidence that platted 19th or 20th streets were specifically ever so used. In contrast, the evidence showed that the Morans erected fences in 1952 and other structures within those fences thereafter, which, under the circumstances, gives every indication of being unambiguously and openly hostile to any possible use of the land as streets.

We believe the Morans have adversely possessed the land that they fenced-in. Therefore, the other owners in the subdivision had the burden of proving "reasonable objections" to the vacation of that land pursuant to the LDA. See *In re Gondek*, 69 Mich App 73; 244 NW2d 361

(1976). We conclude that in light of the Morans' contiguous ownership of the entire length of the streets in question, the testimony that the streets are not practical access routes to the beach, the other available access routes, and the somewhat speculative nature of what the subdivision may look like in the future, no such reasonable objections can be found.

In summary, we believe that the trial court, faced with a magnificently convoluted and contentious situation, for the most part crafted as equitable a result as the law and evidence could permit under the circumstances. However, the trial court's decision not to vacate 19th and 20th streets was improper, and while we commend the trial court's intentions, we must reverse that ruling.[3] Because the parties averred at oral argument that all other issues had been resolved, we have not considered them. We remand this matter to the trial court and instruct the trial court to vacate 19th and 20th streets to the extent the Morans actually used the land thereunder for the requisite 15-year period in favor of the Morans and modify the plat accordingly. In Docket Number 318041, the appellees are the prevailing party and may tax costs pursuant to MCR 7.219(A). In Docket Number 318096, neither party has prevailed in full, so neither party may tax costs. We do not retain jurisdiction.

/s/ Douglas B. Shapiro
/s/ Elizabeth L. Gleicher
/s/ Amy Ronayne Krause

---

[3] We express no opinion regarding the propriety of the trial court's rulings regarding the other platted streets, because, as discussed, they are not properly before us.